## THE STATE v. HESTERLY, Appellant.

### Division Two, May 31, 1904.

1. **CARNAL KNOWLEDGE: Girl Under Care of School Teacher.** The relation of teacher in a public school and a girl pupil in that school falls within the class contemplated by our statute which declares that "if any guardian of any female under the age of eighteen years, or any other person to whose care or protection any such female shall have been confided, shall defile her, by carnally knowing her, while she remains in his care, custody or employment, he shall," etc.

2. ————: ————: **After School Hours.** The relation contemplated by the statute exists between a school teacher and his pupils after school hours as well as within school hours; after the girl reaches home, as well as when he accompanies her to literary exercises held at the schoolhouse at night.

3. ————: ————: **Purpose of Statute.** The essence of the offense created by the statute is the violation and abuse of a confidential or trust relation. Its purpose is to prevent those who, by reason of their positions, have a stronger influence than they

would otherwise possess over girls of tender years, from exercising such influence improperly.

4. ————: ————: **Government of School by Board.** Those cases which treat of the power of the school board to make rules and regulations for the government of the school, which infringe on the rights of the parents over their children after school hours, are to be distinguished from cases for prosecutions for carnal knowledge by a teacher who under the statute violates the confidential relation of teacher and pupil after school hours.

5. **CONTINUANCE: Application Determined by Oral Testimony.** To permit oral testimony to prove and disprove the grounds for a continuance set up in the application, is unusual, and a practice that is not approved.

6. ————: **Should Have Been Granted.** The application for a continuance was sufficient in form, shows clearly the importance of the evidence which three witnesses would have testified to had they been present, and shows due diligence in trying to secure their presence, and the record indicates that the trial court would not have overruled it had not the State dismissed the first count in the information, and that the trial court overlooked the fact that a part of the testimony of the absent witnesses was important and applicable to the second count. *Held,* that the continuance should have been granted.

Appeal from Howell Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*Green & Clark* for appellant.

(1) The action of the court in overruling appellant's application for a continuance was prejudicial to appellant. Due diligence had been shown to procure the attendance of the absent witnesses, Clinton, Johnson and Nellie Lesh, and all the statutory requirements were met by the affidavit in support of the application and the evidence sought to be obtained was competent and appellant should have been allowed an opportunity to obtain it. State v. Warden, 94 Mo. 648; State v. Anderson, 96 Mo. 250; State v. Maddox, 117 Mo. 667;

State v. Tatlow, 136 Mo. 682.   (2)   The court erred in
giving instruction 2 on the part of the State, for the
reason that it submitted to the jury a question of fact
not pertinent to the issue of the case, and for the further
reason that said instruction was broader than the in-
formation.   State v. Smith, 119 Mo. 439; State v.
Hazeltine, 130 Mo. 475; State v. Walker, 167 Mo. 371.
The literary society was no part of the school exercises.
Sec. 9781, R. S. 1899.   And the prosecutrix was not
confided to the care and custody of appellant within the
meaning of the law while attending the literary society
in his company.   State v. Young, 99 Mo. 289; State v.
Rogers, 108 Mo. 204; State v. Terry, 106 Mo. 214.

*Morton Jourdan* also for appellant.

The information charged the carnal knowledge of
Anna Byers while defendant was a public school
teacher, and as such school teacher had the care, custody,
employment and protection of Anna Byers as a student.
His care, custody, employment and protection ceased
when the girl returned to her home.   Dutt v. Snod-
grass, 66 Mo. 287; Diskins v. Glase, 85 Mo. 485; State
ex rel. v. Osborn, 24 Mo. App. 315; State ex rel. v. Rand-
all, 79 Mo. App. 226; State ex rel. v. Osborne, 32 Mo.
App. 536; Bishop's Non-Contract Law, sec. 595;
Bishop's New Criminal Law, sec. 886.

*Edward C. Crow*, Attorney-General, for the State.

FOX, J.—On the fifteenth of January, 1903, the
prosecuting attorney of Howell county filed an amended
information in this cause.   The trial was had upon the
second count of the information, which was as follows:
"And M. E. Morrow, prosecuting attorney as
aforesaid, further informs the court that on the———
day of December, A. D. 1902, at said Howell county,
said William Hesterly, being then and there *a public*

*school teacher* in said county, and *as such teacher* being
then and there a person to whose care and protection one
Anna Byers, *as a student,* was then and there confided,
did then and there willfully, unlawfully and feloniously,
defile her, the said Anna Byers, by then and there un-
lawfully, feloniously and carnally knowing her; she, the
said Anna Byers, then and there being a female under
the age of eighteen years, to-wit, of the age of sixteen
years, and she, the said Anna Byers, then and there
being and remaining in the care, custody, employment
and protection of the said William Hesterly; against the
peace and dignity of the State.''

This cause was called for trial on the twenty-fourth
of March, 1903. The defendant filed the following ap-
plication for a continuance:

''W. S. Hesterly, defendant in the above entitled
cause, being duly sworn, upon his oath states that he
can not safely proceed to the trial of said cause at this
term of court on account of the absence of H. Clinton,
Riley Johnson and Nellie Lesh, who are competent and
material witnesses for the defendant in said cause; that
said witnesses reside in Douglas county, Missouri; that
he believes that he can prove by the said witness Clinton
that the prosecuting witness, Anna Byers, is of bad
repute for truth and veracity, and virtue and chastity,
in the neighborhood in which said Anna Byers lives;
that he will also be able to prove by said Clinton that
said Anna Byers had been guilty of specific acts of
lewdness and immorality; that he will be able to prove
by said witness Johnson that said Anna Byers, pros-
ecuting witness, has had sexual intercourse with one
George Bundren, prior to the filing of the information
in this case; that her reputation for virtue and chastity
in the neighborhood in which she lives is bad; that he
will also be able to prove by said Johnson that he, said
Johnson, attended school where this defendant was
teaching at the time of the alleged defiling of said Anna

Byers, as charged in the second count of the information in this cause, and that said witness will testify that at no time during the term of school was this defendant absent from the school grounds at the same time that said prosecuting witness was absent, except one time when said prosecuting witness went to the post office with defendant, and that at that time said witness, Johnson, was at a place that, if defendant and prosecuting witness had had sexual intercourse, said witness, Johnson, could have seen them; that he will be able to prove by said witness, Nellie Lesh, that said prosecuting witness, Anna Byers, admitted to said witness that she had had sexual intercourse with one George Bundren, prior to the filing of the information in this case, and that she and said Bundren were setting a trap for this defendant; that he believes said facts as above set out to be true; that he is unable to prove said facts by any other witness whose testimony can be as readily procured; that said witnesses are not absent by the connivance, procurement or consent of the defendant; that he caused to be issued out of the office of the clerk of this court, on the fourteenth day of March, 1903, a subpoena for each of said witnesses, and that said subpoenas were duly served upon said witnesses as follows: on said witness Johnson on the eighteenth day of March, 1903, and on said witness Clinton on the twentieth day of March, 1903, as will more fully appear by the return upon said subpoenas, under oath of this defendant; that said witness, Nellie Lesh, was subpoenaed at the former term of this court; that since the service of said subpoena upon said witness, Nellie Lesh, that is to say on or about the twenty-first day of March, 1903, said Nellie Lesh left this State, going to the State of Washington; that this defendant did not know of such fact until too late to give notice to take the deposition of said witness; that the wife of said witness Clinton is unable for said witness to leave his home to attend court, as will more fully appear by the certificate of her attending physi-

cian, Jno. W. Lovan, M. D., hereto attached and made a part hereof; that said witness Johnson is unable to leave his home on account of being sick with the measles, as will more fully appear from the certificate of his attending physician, M. H. Osburn, M. D., hereto attached and made a part hereof; that this application is not made for vexation or delay merely, but to obtain substantial justice on the trial of this cause; and this affiant further saith not.''

The physicians' certificates, as above referred to, are as follows:

''Roosevelt, Mo. March 21, 1903.

''To Whom it may Concern: This is to certify that H. Clinton can not safely leave home on account of his wife. She is now under my treatment and is in a family way and is liable to be confined at any time, and it seems from all appearances that she has now gone the full time.

''Jno. W. Lovan, M. D.''

''Ava, Mo., March 18, 1903.

''To Whom it May Concern: This is to certify that Riley Johnson is sick at this place with measles and that it is unsafe for him to leave his room for some days to come; that said patient has just taken said disease and has quite a severe attack.

''M. H. Osburn, M. D.''

The prosecuting attorney filed a counter-affidavit, to which the defendant filed a re-joinder. The court seemed to treat the affidavit of defendant, the counter-affidavit of the prosecuting officer and the re-joinder of the defendant, as an issue framed for trial, and the State introduced, upon that issue, a number of witnesses who testified orally upon the matters embraced in the affidavits. Witnesses were examined in chief and cross-examined.

The defendant objected to all the oral testimony

introduced by the State in resisting the application for a continuance, which objection was overruled, and the State then dismissed as to the first count in the information, and the application of defendant for a continuance was overruled and the trial proceeded.

The testimony on the part of the State shows that the defendant was the teacher of the public school, and that the prosecuting witness, Anna Byers, by her mother and step-father with whom she lived, was sent to school as charged in the information. The testimony shows that there were meetings of a literary society held at the schoolhouse, and that defendant frequently accompanied Anna Byers to those meetings, and the step-father testified that he understood that the "literary" was a part of the school, and that it was necessary for the pupils to attend. The mother of Anna Byers testified that she was sixteen years old in July, 1902. She further testified that it was understood that the "literary" was a part of the school. The defendant had charge of the school; the prosecuting witness was a pupil of the defendant at such school.

Anna Byers, the prosecuting witness, testified: That she was sixteen years of age; knew the defendant, attended the school of which he was the principal, as a student; that she attended the literary society on Wednesday nights; that defendant accompanied her to and from the literary society upon several occasions; that in September at Hollingshad's house, where the defendant lived, he put his arm around her and asked her if she wanted to have a good time all winter; that she told him she did; that he did nothing further then. She testified positively that the first sexual intercourse between the defendant and her was "one Sunday in October as we went to church;" that after that, they had intercourse two or three times a week until a little before Christmas. It appears from her cross-examination that at the time of the first sexual intercourse, they had started from Hollingshad's house to attend the singing

exercises at the church.   It is not contended that Anna
Byers lived at Hollingshad's house, but the proof shows
that she went over there that afternoon; that from that
house where the defendant lived, they started to the
singing exercises at the church, and on the way to the
church, had, for the first time, sexual intercourse.   She
further testified that defendant had sexual intercourse
with her in November, at the noon recess.   Her testi-
mony as to her action at this time, is thus stated in her
testimony, as disclosed in the record:

"Q.   Did he ever have sexual intercourse with you
during school?   A.   One day at noon, between the
schoolhouse and Hollingshad's post office.

"Q.   How far is that?   A.   About three-fourths
of a mile.

"Q.   Is there timber there?   A.   Yes, sir.

"Q.   What road is that on?   A.   There is a path
and a big road; we went the path and came back the
road.

"Q.   In going down there, did you have sexual
intercourse?   A.   Yes, sir; once going down and once
coming back.

"Q.   Did anybody come up while you were there?
A.   Yes, sir; Emery Hall and Frank Walker came by
on horseback.

"Q.   What did you do when they came up?   A.   I
jumped up and went on to the post office.

"Q.   Which way were they going?   A.   To the
schoolhouse.

"Q.   As you came back you had sexual intercourse
again?   A.   Yes, sir.

"Q.   What time was that?   A.   In November last.

"Q.   In this county and State?   A.   Yes, sir."

This testimony of Anna Byers as reproduced, is
corroborated by the testimony of Emery Hall.

On the part of the defendant, he testified in his
own behalf, and states substantially that he never had

sexual intercourse with the prosecuting witness Anna Byers, while she was his pupil, nor at any other time.

The testimony further tended to show the bad reputation of G. W. Bundren, the step-father of Anna Byers, as also a bad reputation in the neighborhood for chastity of Anna Byers, and a good reputation for the defendant. There was other testimony on the part of the defendant, contradicting G. W. Bundren, the step-father, and that he stated that this whole trouble could be settled, if money enough was paid. This is a sufficient recitation of the testimony in this cause, to indicate the legal propositions involved.

There is only one instruction complained of, and we will give that proper attention in the course of the opinion.

Upon the submission of this case to the jury, a verdict of guilty was returned, and defendant's punishment assessed at five years' imprisonment in the penitentiary. Judgment was duly rendered upon this verdict, and in due time and form defendant prosecuted his appeal to this court, and the record is now before us for review.

OPINION.

This appeal presents three questions for consideration:

First. It is contended by appellant that the evidence is insufficient to authorize the conviction of the defendant of the offense, created by the statute, upon which the information is predicated.

Second. That instruction numbered 2 is erroneous, and is broader than the charge contained in the information.

Third. That the court committed error in overruling defendant's application for a continuance.

Section 1845, Revised Statutes 1899, upon which this information is based, provides: "If any guardian

of any female under the age of eighteen years, or any other person to whose care or protection any such female shall have been confided, shall defile her, by carnally knowing her, while she remains in his care, custody or employment, he shall, in cases not otherwise provided for, be punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year and a fine not less than one hundred dollars.''

The lawmakers evidently contemplated the strong influences that could be exercised by those occupying confidential relations to girls of tender years, and the section quoted doubtless was enacted for the purpose of throwing around those girls who might, by reason of their position, be susceptible of improper influences, such safeguards as would prevent the abuse of the confidential relations. [State v. Rogers, 108 Mo. 1. c. 204.]

That the relation of teacher and pupil fall within the class contemplated by the statute, there can be no doubt; the correctness of that proposition is not even controverted by appellant in this cause. Bishop on Non-Contract Law, section 597, very clearly states the relation: ''Within the purposes and scope of a school over which a teacher presides, he stands in a semi-paternal relation to his pupils. By formal rule or by specific command, and subject to any authority superior to his, he may regulate their conduct in school, and out of school so far as it affects the discipline and studies within. And he may force obedience by expulsion, by chastisement, or by other proper means.''

The instruction complained of by appellant is as follows:

''If you believe from the evidence that defendant was teaching school at the Vienna schoolhouse and the prosecuting witness, Anna Byers, was, with the consent of her parents, attending this school as a pupil of defendant, and also attending a literary society held

under the direction of the teachers and in connection with, and as a part of the exercises of the school, then said Anna Byers was, while attending said school and literary society, confided to the care and protection of defendant, and if you believe that Anna Byers, while a pupil in said school, did, with the consent of her parents, accompany defendant to the literary society and return therefrom with him, then for the purpose of this case she was confided to his care and protection, while going to and returning from the literary society.''

The contention of appellant is, that after school hours, and the children reach their homes, the relation contemplated by the statute is severed; hence the instruction is broader than the law, or the charge in the information, in that, it tells the jury that in contemplation of law she was confided to his care in accompanying the defendant to the literary society.

We are unwilling to sanction the contention of appellant which undertakes to limit the provisions of the statute to such a narrow field. In other words, we are unwilling to say that a teacher, who has in his charge girl pupils of tender age, so long as they are in the school room or on their way home from school, are under his care and protection; but so soon as they reach the parental roof, his care and duty of protection of them is shaken off, and he is no longer subject to the penalties of the statute for defiling them.

The confidential relation of teacher and pupil exists as well after the child reaches home, as it does in the school room; it exists on Sunday, as well as on a school day. The evil intended to be prevented is the abuse of the confidential relation, and that exists wherever they may be and on all occasions, as long as the relation of teacher and pupil are in existence.

It was very aptly said by MACFARLANE, J., in State v. Rogers, supra, that ''the purpose of the law was to prevent guardians, employers and others, occupying

confidential relations to girls of tender years, from abusing such confidence.''

The essence of the offense created by the statute is the violation and abuse of a trust relation; in other words, it is to prevent those who, by reason of their positions have a stronger influence than they would otherwise possess over girls of tender years, from exercising such influence improperly. We can conceive of the creation of no higher trust than that of the parents confiding the care of their children to the teacher. If the care and protection contemplated by the statute, as applicable to teachers of the youth of the country, simply means that they are confided to their care for the purpose of teaching them each day for a few hours, and that is the end of their duty, and constitutes a faithful and conscientious performance of all the duties imposed by reason of the relation of teacher and pupil, then we confess an absolute misconception of the duties resting upon those in charge of schools as teachers.

. As applicable to this case, Anna Byers, in contemplation of the provisions of the statute, remained in the care of the defendant as long as the relation of teacher and pupil existed. We do not believe that a school teacher, to whose care has been confided a girl of tender years, can, by reason of his influence over her as a teacher, obtain her consent to sexual intercourse, and after school hours, at her home or any other place, defile her, and claim exemption from the penalties of the statute on the ground that she was not in his care. Such a construction is entirely too narrow, and is not in harmony with the intent and purpose of the Legislature in enacting the statute.

As applicable to the correct interpretation of the section of the statute now being discussed, we fully approve the clear and apt announcement of the rule by the Supreme Court of the United States in the Hartwell case, 6 Wall. 1. c. 394; it was there said by Mr. Justice SWAYNE:

"We are not unmindful that penal laws are to be construed strictly. It is said that this rule is almost as old as construction itself. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up. The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That constitutes the law. If the language be clear it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the Legislature intended to embrace. . . . . The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and objects of the Legislature. The rule of strict construction is not violated by permitting the words of the statute to have their full meaning, or the more extended of two meanings, as the wider popular instead of the more narrow technical one; but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

In State v. Kavanaugh, 133 Mo. 412, the statute upon which this prosecution is based was reviewed in a full and exhaustive opinion by GANTT, J., and the rule as announced in the Hartwell case, supra, was fully adopted. After a very thorough discussion of all the authorities applicable to the subject, the conclusion reached was thus expressed:

"We are not unmindful that men are not to be made subject to criminal laws by implication and that only those transactions are covered by criminal statute which fall within both their spirit and letter, but we are disposed to so construe this statute as to promote the purpose and object of the Legislature by ascribing that meaning to its words which, in our opinion, best harmonizes with the context, and we do not violate the rule of strict construction by giving to the words of the

statute their full meaning and thus effectuate what we believe was the intention of the Legislature in adopting them.''

There was no prejudicial error to the defendant in giving the instruction complained of; as herein indicated, under the statute it might have been made broader. The evidence, if true and believed by the jury, as to the sexual intercourse in going to church and to the literary society, would support a conviction in this cause; but aside from this, counsel doubtless overlooks the testimony of Anna Byers as to the sexual inter-. course at the noon recess, in going to and returning from the post office. That occurrence was during school hours, and she was not under the care and custody of her parents, and even according to the views of appellant's counsel, she was then in the care of defendant, and the court may have very appropriately confined its instructions to that part of the testimony. .

In reaching the conclusion as herein indicated, upon the first and second propositions involved in this cause, we are not unmindful of what is said in the cases cited by appellant's counsel. Those cases treat principally of the power of teachers and educational boards to make rules and regulations which infringe upon the rights of the parent; they are to be distinguished from the case at bar, wherein it is sought by the statute to be construed to prevent the abuse of a confidential relation, which exists as well between the teacher and the pupil when the pupil is not under the immediate care and custody of its teacher in the school room, as it does when the child is under such immediate care and custody.

This brings us to the only remaining proposition in this cause; that is, was the action of the court in overruling defendant's application for a continuance such error as would warrant the reversal of this cause?

In granting or refusing applications for continuance in criminal cases, the ruling of this court on that

question has been uniform, that it rests largely in the discretion of the trial court, and its action upon such application will not be disturbed, unless it is made to appear that its discretion has been unsoundly or oppressively exercised. [State v. Dettmer, 124 Mo. 426; State v. Banks, 118 Mo. 117.]

The application of the defendant in this case was substantially in due form, it strictly complied with the requirements of the statute. Upon the filing of the application, the prosecuting attorney filed a counter-affidavit, and then it was that the court seems to have introduced a new practice in this State, of trying upon oral testimony the issue presented by the affidavits.

This court in numerous cases has recognized as proper practice, to permit the State, upon applications of this character, to file counter affidavits; but our attention has not been called to any case that sanctions the practice of introducing witnesses and hearing their oral statements, by a formal examination in chief and cross-examination, upon the issue presented by an application for a continuance. This was an unusual practice, and one that does not commend itself to this court. The case is for trial, and no collateral issue preliminary to it should be injected into the case, and assume the form of a trial in the presence of those persons, some of whom, at least, will be selected as jurors to try the case.

The practice, fully recognized and approved by this court, of resisting the application by counter affidavits, is the one that should be followed. The testimony of witnesses, taken orally in support of the counter affidavit, did not add anything to it, and by no means established the fact that the application was made simply for delay. It is disclosed in the record that upon the close of the oral testimony taken in resisting the application for a continuance, and prior to any ruling of the court on the application, the prosecuting officer

dismissed the first count of the information, and upon such dismissal, the court overruled the application.

It is strongly indicated by the record that the trial court regarded the testimony of the absent witnesses as applicable alone to the first count, and therefore felt warranted in overruling it; and that is now urged in this court as a reason for the action of the trial court, and upon that ground it is insisted that there was no error committed. If that was the basis of the trial court's action, as it appears to have been, it is apparent that some of the testimony which it is alleged such absent witnesses would give was overlooked.

It is averred in the application that witness Johnson will testify that he attended the school at the time it is alleged Anna Byers was defiled by defendant; that defendant was not absent at any time from the school grounds, at the same time that Anna Byers was, except one time that the prosecuting witness went to the post office with the defendant, and that witness Johnson was then in a position to see both of them all the time, and had there been any sexual intercourse, he would have seen it. This testimony, if the witness would so testify, was of great importance to the defendant, for it clearly contradicts the prosecuting witness as to the occurrence at the noon recess, when she said that she and defendant had sexual intercourse on their way to the post office.

Witness Nellie Lesh, another one of the absent witnesses, would testify, so the application alleges, that Anna Byers, the prosecuting witness, admitted to her, before the filing of the information, that she had sexual intercourse with George Bundren, and that she and Bundren were setting a trap for the defendant.

It is also alleged in the application for continuance that witness Clinton would testify that the reputation of Anna Byers in the neighborhood in which she lived, for truth and veracity, was bad. During the trial there was testimony introduced as to her bad reputation for chastity; but none upon her reputation for

truth and veracity; hence this was important to the defendant.

It will be observed that the testimony in this case as to the most essential element of the offense, that of sexual intercourse, rests entirely upon the statements of the prosecuting witness, Anna Byers. Her testimony is directly contradicted by the defendant. Her reputation is shown to be bad; that of defendant to be good; hence we can readily appreciate the importance of the testimony of the absent witnesses in the trial of this cause. That the testimony of the absent witnesses, as herein indicated, was applicable to the charge in the second count of the information, is beyond question.

This is a serious charge, and one calculated from the mere fact of that accusation, to arouse public feeling against the defendant; hence it is important that the rights guaranteed to the defendant in respect to having his witnesses present at the trial, process for them and compulsory process, when required, should be carefully protected. If the absent witnesses will testify to the facts as averred by defendant's application, he is entitled to have them present at the trial; and while this court is at all times reluctant to reverse the action of the trial court upon application of this character, yet in view of the fact that the application is sufficient in form, shows clearly the importance of the evidence, due diligence in trying to secure it, and the indication from the record that the trial court, had it not overlooked the fact that a part of the testimony of the absent witnesses was important and applicable to the second count of the information, would have granted the continuance, we are unwilling to say that the overruling of this application did not endanger the rights of the defendant to a fair and impartial trial upon the charge preferred against him.

The application for a continuance should have been sustained, and for the error in failing so to do, the judgment is reversed and the cause remanded. All concur.