STATE of Missouri, Respondent,

v.

Frank A. PASTEUR, III, Appellant.

No. 22615.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 30, 1999.

Motion for Rehearing or Transfer
Denied Dec. 27, 1999.

Application for Transfer Denied
Feb. 22, 2000.

J. Martin Hadican, Mary Elizabeth Ott, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Chief Judge.

Frank A. Pasteur, III ("Defendant") was charged by amended information with endangering the welfare of a child in the first degree, § 568.045,[1] and sexual misconduct in the first degree, § 566.090. A jury returned a guilty verdict on both counts, and he was sentenced to two consecutive one-year prison terms and ordered to pay fines of $5,000 and $1,000. Defendant appeals both convictions, asserting that the trial court erred in 1) denying his request for severance of the individual counts of the indictment, 2) allowing testimony relating to uncharged acts of misconduct, 3) submitting jury Instruction No. 6, patterned after MAI–CR 3d 322.10.2, and 4) overruling his motion for judgment of acquittal at the conclusion of the State's case and at the conclusion of all of the evidence.

As Defendant contests the sufficiency of the evidence supporting his convictions, appellate "review is limited to a determination of whether there is sufficient evidence

---

1. All statutory references are to RSMo 1994 and all rule references are to Missouri Rules of Criminal Procedure (1999), unless otherwise indicated.

from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 551, 142 L.Ed.2d 458 (1999). In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *Id.* Viewed in this light, the evidence most favorable to the verdicts shows:

Defendant was a band instructor at Malden High School in Malden, Missouri when both victims, A.M.T. and S.S.,[2] were students. During the 1995–1996 school year, he met and had conversations with A.M.T., a blind student. On May 24, 1996, A.M.T. spoke with Defendant and asked his opinion about whether she should date an older man. During their conversation, Defendant said that a younger man would ask if he could touch her but that an older man might not. Defendant then asked A.M.T. what she would do if he touched her. When she did not respond, Defendant raised her shirt, put his hand in her bra, and put his mouth on her breast. A.M.T. told him that she did not "like him in that way" and Defendant stopped. When A.M.T. told him that she felt guilty about what he had done, Defendant told her that he also felt guilty because he "wished his wife had a body like [A.M.T.'s]."

At the beginning of the 1996–1997 school year, Defendant approached A.M.T. and asked her if she would like him to teach her to play the recorder. A.M.T. agreed, and during the first lesson at Defendant's home, Defendant began to massage A.M.T.'s shoulders and asked her if he could touch her one more time. A.M.T. said "no" and Defendant remarked that lessons "usually don't come for free." A.M.T. then asked if Defendant was mad at her, and Defendant said "no." However, he said that he thought A.M.T. would eventually tell him to "take" her. After this incident, Defendant did not attempt any further sexual contact with A.M.T.

In November 1997, Defendant talked with S.S., a fourteen-year-old student at the high school, and offered to give her a ride home from a school play. When the play was over, Defendant and S.S. chatted, and Defendant told S.S. that she should call home as it was getting late. When she called home, her father told her to be careful, which made S.S. angry. Defendant asked what was wrong, and then told her that her father was just "watching out" for her, as "a lot of guys would try to take advantage of a 14–year-old." Defendant told her that she was pretty and that she looked nice. S.S. remarked that people had told her that she looked older, and Defendant responded that when she was fifteen or sixteen years old, she would be two or three inches taller and would have larger breasts. Defendant then began to talk about having a relationship. He told S.S. that they would have to keep their relationship confidential because he could get arrested or fired if she told anyone.

Defendant and S.S. left the school in Defendant's truck. On the way home, Defendant stopped by his home and took S.S. inside. Defendant said that he thought he would give S.S. a quick tour of his house in case she "needed to know for the future." He then remarked, "because you don't know what's going to happen in the future, do you?"

After leaving Defendant's house, they drove toward S.S.'s home, and Defendant again asked if they could have a relationship to which S.S. responded "yeah." As they drove, Defendant reached over and put his hand on S.S.'s breast and remarked "there's your first test." He then asked if she liked it and S.S. nodded. While his hand was on her breast, S.S. asked him, "why don't you just kiss me?" and at the next stop sign, he leaned over and kissed S.S. on the lips. Defendant told her that she was lucky that they did not have more

2. Initials are used to protect the minors' privacy.

time because if they did, he would "suck [her] nipples for [her] a little bit." Defendant then told S.S. that the first time they had intercourse "it would be so great that [he]'d worry about [S.S.]." Defendant told her, however, that she would not have to worry about becoming pregnant because he had a vasectomy. Defendant then dropped S.S. off at her home.

The following day, November 24, 1997, Defendant and S.S. met and discussed how and when they would call each other. That afternoon, Defendant called S.S., but she was not at home. S.S. returned his call, but Defendant said that he could not talk because his wife was there. A few minutes later, Defendant called S.S. from his truck.

On November 25, 1997, Defendant saw S.S. at band practice. As the students were leaving the band room, Defendant told one student to hold open the door, and Defendant turned out the lights. As Defendant and S.S. where leaving the room, Defendant walked up behind S.S. and put his hand on her breast and kissed her. Following this incident there was no further sexual contact between Defendant and S.S.[3]

Defendant was charged on September 25, 1998, with the class D felony of endangering the welfare of a child in the first degree (Count I), and the class A misdemeanor of sexual misconduct in the first degree (Count II). The jury returned a guilty verdict on both counts. On October 13, 1998, Defendant was sentenced to two consecutive sentences of one year in jail. Execution of the second year was suspended and supervised probation was granted. As a condition of the probation, Defendant was ordered to pay fines of $5,000 and $1,000, and complete a sex offender program. Defendant appeals.

In his first point on appeal, Defendant argues that the trial court erred in failing to grant his request for severance of the individual counts of the indictment. Defendant contends that he was denied a fair trial in that he was substantially prejudiced by the trial court's refusal to sever.

■ Defendant's contention of error requires a two-part analysis. *State v. Tripp*, 939 S.W.2d 513, 517 (Mo.App. S.D.1997). The first issue is whether the offenses were properly joined in the information. *Id.* Upon a finding that joinder was proper, the appellate court must then consider whether the trial court abused it discretion by denying the motion to sever and trying the offenses in a single prosecution. *Id.*

■ Joinder addresses the basic question of what crimes can be charged in a single proceeding as a matter of law, while severance assumes that joinder is proper and gives the trial court discretion to determine whether prejudice would result if the charges were tried together. *State v. Olds*, 831 S.W.2d 713, 718 (Mo. App. E.D.1992). "A defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." *State v. Baker*, 524 S.W.2d 122, 126 (Mo. banc 1975); *State v. Hemme*, 969 S.W.2d 865, 869 (Mo.App. W.D.1998). In a criminal case, liberal joinder is favored in order to achieve judicial economy. *State v. Kelley*, 901 S.W.2d 193, 202 (Mo.App. W.D. 1995).

Joinder is governed by Section 545.140(2), which provides:

Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

---

**3.** The following weekend, S.S.'s mother found her diary, which contained entries detailing the relationship. Her mother reported the incidents to the authorities.

Joinder of more than one offense in a single indictment or information is also provided for in Supreme Court Rule 23.05 which states:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

■ Similar tactics followed in the commission of crimes suffice to show acts "of the same or similar character." *State v. Hopkins*, 947 S.W.2d 826, 832 (Mo.App. W.D.1997). For the purpose of joinder, the manner in which the crimes were committed should be so similar it is likely that the same person committed all the charged offenses. Tactics need only resemble or correspond with tactics used in another joined offense and need not be identical. *State v. Kelley*, 953 S.W.2d 73, 79–81 (Mo. App. S.D.1997), *cert. denied*, 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998).

In *State v. Conley*, 873 S.W.2d 233, 238 (Mo. banc 1994), for instance, the Missouri Supreme Court held that four counts of sodomy, three counts of sexual assault in the first degree, and one count of attempted sodomy, involving five victims, were properly joined. The court found that the requirement that the offenses be "of the same or similar character" was satisfied as all of the offenses involved illicit sexual conduct toward minors, which occurred during a two-year period at a group home for boys. Further, in *State v. Meder*, 870 S.W.2d 824, 829 (Mo.App. W.D.1993), the court found that three counts of rape were sufficiently similar and properly joined where the three victims were the daughters of the defendant, the rapes occurred in the same location within a two-week period, and the defendant threatened the victims after the rape. Additionally, this court in *Hemme*, held that one count of rape, one count of sodomy, and one count of deviate sexual assault against two minor

victims were properly joined where both counts involved illicit sexual contact in which the defendant removed the minor's clothing, disregarded the victim's objections, performed deviate sexual intercourse, and badgered the victim for sexual intercourse. 969 S.W.2d at 869–870.

■ The offenses in the present case contain similarities comparable to those in *Conley*, *Meder*, and *Hemme*. Both of the charges involved illicit sexual contact with minors, and both A.M.T. and S.S. were students at the school where Defendant taught. In both instances, Defendant used his position as an educator to gain the trust of the young women and befriend them. Defendant had discussions about older men and dating with both young women and touched each girl's breast. The evidence shows that both offenses were of similar character and thus, there was no error in joining the offenses.

■ Upon finding that the charges against the Defendant were properly joined, the remaining question with respect to Defendant's first point is whether the trial court abused its discretion by refusing to sever the two sets of offenses for separate trials. *Tripp*, 939 S.W.2d at 518. A trial court's denial of a motion to sever will not be reversed absent an abuse of the trial court's discretion and a clear showing of prejudice. *Meder*, 870 S.W.2d at 829. In deciding whether to grant a motion to sever, the trial court must weigh the benefits of trying the offenses together against the potential prejudice to the defendant. *Id.*

The severance of multiple offenses, jointly charged in an information, is governed by § 545.885.2 and Supreme Court Rule 24.07, which state that the court may grant severance upon a "particularized showing of substantial prejudice." Substantial prejudice has been defined as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imagi-

nary, illusionary or nominal." Section 545.885.2.

In assessing whether Defendant was actually prejudiced by the trial court's refusal to sever the offenses for trial, the relevant issues are the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *Hopkins*, 947 S.W.2d at 832. In the instant case, there were two offenses charged. One offense was committed between November 19 and November 28, 1997, and the other occurred on May 24, 1996. Each victim testified coherently, and the facts surrounding each offense were easily distinguishable from the facts surrounding the other. There was nothing before the trial court that would have caused it to believe a jury could not distinguish between the evidence offered as to each offense and apply the evidence to the appropriate occurrence.

Furthermore, jury Instruction No. 5, patterned after MAI–CR3d 304.12, informed the jury that a separate offense was charged in each count and that each count was to be considered separately. The jury returned a separate verdict for each offense charged, and there is no reason to believe that the jury did not consider these offenses separately.

The trial court did not abuse its discretion in denying Defendant's request for severance. There were no circumstances indicating that Defendant was unfavorably prejudiced to such an extent that the benefits available to the court if the cases were tried together were outweighed. Defendant's first point is therefore denied.

In his second point, Defendant contends that the trial court erred in allowing A.M.T. to testify to uncharged acts of mis-

conduct alleged to have been committed by Defendant against A.M.T. Specifically, Defendant argues that the trial court erred in allowing A.M.T. to testify as to Defendant's actions in the fall of 1996 when Defendant asked if he could touch A.M.T.'s breast "one more time." Defendant asserts that such conduct was irrelevant to the May 24, 1996, charged act of misconduct and that, therefore, such testimony was manifestly unjust.

Defendant did not object to A.M.T's testimony concerning the fall 1996 incident and he did not include such a claim in his motion for a new trial. "Failure to object at the earliest opportunity to the admission of evidence constitutes a waiver of the contention." *State v. Holloway*, 992 S.W.2d 886, 892 (Mo.App. S.D. 1999). Thus, the issue has not been properly preserved. *Id.* Defendant is cognizant of the fact that he may not have properly preserved the question that he now presents for appellate review. He, however, asks that the Court review the issue on the basis of plain error under Rule 30.20.[4]

In order to prevail on plain error review, Defendant must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice will result if the error is not corrected. *State v. Skillicorn*, 944 S.W.2d 877, 884 (Mo. banc 1997), *cert. denied*, 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997). Manifest injustice is dependent upon the facts and circumstances of the particular case. *State v. Zindel*, 918 S.W.2d 239, 241 (Mo. banc 1996).

The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior

---

4. Rule 30.20 states:

Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *Skillicorn*, 944 S.W.2d at 886.

"Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). The evidence must also be "legally relevant," as the probative value of the evidence must outweigh its prejudicial effect. *Skillicorn*, 944 S.W.2d at 886. The balancing of the effect and value of evidence rests within the sound discretion of the trial court. *Bernard*, 849 S.W.2d at 13.

In the instant case, Defendant contends that A.M.T.'s testimony concerning the fall 1996 incident was elicited solely for the purpose of showing Defendant's propensity to engage in sexual misconduct and was, therefore, improper. Defendant's statement, however, can be viewed as an admission of prior misconduct and thus, relevant to prove the charged offense. Defendant's request to touch A.M.T.'s breast "one more time" tended to support A.M.T.'s allegation that Defendant had, in fact, touched her breast on May 24, 1996.

No manifest injustice or miscarriage of justice is found in the trial court's admission of A.M.T's testimony concerning the fall 1996 incident, as the evidence was both logically and legally relevant to the charged misconduct, and did not constitute an abuse of discretion. Consequently, Defendant's second point must be denied.

In his third point, Defendant asserts that the trial court erred in giving Instruction No. 6,[5] the verdict director for endangering the welfare of a child in the first degree. Defendant argues that the instruction did not conform to the law, failed to set out only the essential elements of the offense charged, and was not supported by the record.

A verdict directing instruction must set forth all of the facts necessary to constitute the charged offense and must be supported by the evidence. *State v. Richards*, 795 S.W.2d 428, 434 (Mo.App. E.D. 1990). Whether or not an instruction informs the jury as to what constitutes the charged offense is to be determined by the meaning of the language used in that instruction. *State v. Ogle*, 627 S.W.2d 73, 76 (Mo.App. S.D.1981). A faulty instruction, one that fails to conform to the elements of the offense and for which a defendant suffers prejudice, is grounds for reversal. *State v. Carson*, 941 S.W.2d 518, 523 (Mo. banc 1997).

MAI–CR 3d 322.10.2, upon which Instruction No. 6 was based, is the appropriate pattern instruction for the offense of endangering the welfare of a child in the first degree and sets forth the elements of the offense as contained in § 568.045.1(2). Defendant, however, contends that the in-

---

**5.** Instruction No. 6, patterned after MAI–CR 3d 322.10.2, read, in pertinent part (emphasis added):

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
First, on or about the 19 th day of November, and the 27 th day of November, 1997, in the County of Dunklin, State of Missouri, the defendant touched the breast of [S.S.], and
Second, that this conduct constituted sexual contact, and
Third, that [S.S.] was less than seventeen years old, and

Fourth, that the defendant acted knowingly in engaging in sexual contact with [S.S.], a child less than seventeen years of age, and
Fifth, *that defendant was a school teacher, and charged with the care and custody of the child,*
Then you will find the defendant guilty under Count I of endangering the welfare of a child in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

struction was faulty in that it required the jury to find that Defendant "was a school teacher, and charged with the care and custody of the child," a proposition he contends was not supported by the evidence. Defendant essentially argues that a teacher should not automatically be charged with the care and custody of his students, absent specific evidence of a special relationship between the parties, such as guardianship.

Section 568.045.1(2) clearly states that it applies to any "person ... otherwise charged with the care and custody" of the child. Although not statutorily defined under § 568.045.1(2), the words "care and custody" commonly refer to "supervision" or "immediate charge and control exercised by a person or an authority." WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1967). Further, the words "care and custody" have been broadly defined in other statutory contexts. For instance, § 210.110(11) defines "[t]hose responsible for the care, custody, and control of the child" in cases of child abuse as "those included but not limited to the parents or guardian of a child, other members of the child's household, or those exercising supervision over a child for any part of a twenty-four hour day."

Teachers are undeniably charged with the "care and custody" of students. When parents send their child to school, they entrust the teacher with that child's well-being. For nearly a century, courts have recognized this basic principle. In *State v. Hesterly*, 182 Mo. 16, 81 S.W. 624, 627 (1904), the court stated that "[w]e can conceive of the creation of no higher trust than that of parents confiding the care of their children to the teacher." The court further noted that a teacher's duty of care and custody extends beyond the confines of the schoolyard. "The confidential relation of teacher and pupil exists as well after the child reaches home as it does in the schoolroom.... The evil intended to be prevented is the abuse of the confidential relation, and that exists wherever they may be, and on all occasions, as long as the relation of teacher and pupil is in existence." *Id.* at 627.

In the instant case, the evidence indicated that Defendant was S.S.'s band teacher, and as such, he held a confidential relationship with her. By virtue of Defendant's position, he was able to exert influence upon her, not only within the confines of the school, but outside of it as well. Section 568.045.1(2) seeks to protect children who are placed in the "care and custody" of any "person" and as such, should be construed to include teachers. The trial court, therefore, did not err in submitting Instruction No. 6 to the jury. Defendant's third point is denied.

In Defendant's fourth and final point, he alleges that the trial court erred in overruling his motion for judgment of acquittal at the conclusion of the State's case and at the conclusion of all of the evidence as to both Counts I and II of the information. He contends that the evidence adduced at trial was insufficient to support his conviction in that it failed to establish 1) a custodial relationship, 2) emotional or physical harm to the victim in Count I, and 3) criminal purpose with regard to Count II.

In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt. *Chaney*, 967 S.W.2d at 52. Substantial evidence is that from which the trier of fact could reasonably find the issue in conformity with the verdict. *State v. Dees*, 916 S.W.2d 287, 298 (Mo.App. W.D. 1995), *cert. denied*, 519 U.S. 857, 117 S.Ct. 157, 136 L.Ed.2d 101 (1996). Further, this Court must accept as true all evidence favorable to the state and disregard all contrary inferences unless they are such a rational extension of the evidence that a reasonable juror would not be able to ignore them. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

In his fourth point, Defendant's first contends that, as to Count I, the State

failed to present any evidence that a custodial arrangement existed between Defendant and S.S. As previously discussed in Defendant's third point, however, the State did present evidence from which the jury could have concluded that Defendant was S.S.'s band teacher and that such a relationship put him in a custodial position. Further, the evidence showed that both instances of misconduct occurred while Defendant and S.S. were engaged in school-related activities, once following a school play and once inside the school after band practice. Given such evidence, a rational juror could have concluded beyond a reasonable doubt that S.S. was in the care and custody of Defendant when the sexual misconduct occurred. This portion of the point is therefore denied.

■ Defendant also asserts, as to Count I, that the State presented no evidence of emotional or physical harm or trauma suffered by S.S. with respect to Defendant's misconduct. Defendant alleges that a showing of harm is required in order to obtain a conviction under § 568.045.1(2) and relies on *State v. Hunter*, 939 S.W.2d 542 (Mo.App. E.D.1997), in support of his proposition. Section 568.045.1(2), which Defendant was charged with violating, however, does not require such a showing of harm. The portion of the statute simply requires that a person "knowingly engage[ ] in sexual conduct with a person under the age of seventeen years over whom he is a parent, guardian, or otherwise charged with the care and custody." Defendant's reliance on *Hunter* is misplaced as *Hunter* examined a conviction pursuant to a different section of the statute, § 568.045.1(1), which does require such a showing of harm. Consequently, this portion of Defendant's fourth point is also without merit.

■ In regard to Count I, Defendant also alleges that the record does not "clearly articulate" S.S.'s age at the time of the alleged misconduct. At the time of the trial, S.S. was only fifteen years of age, and the record reveals that several references to her age were made during trial. For instance, S.S. testified that during the period of November 19, 1997 and November 27, 1997, Defendant and she had a conversation concerning her age and the development of her body. The evidence "clearly articulates" that S.S. was under the age of seventeen when the misconduct occurred. This portion of Defendant's point is denied.

■ Defendant's final contention in his fourth point is that the evidence presented as to Count II did not show that he "possessed criminal purpose" under § 566.090[6] when he put his hand and mouth on A.M.T's breast. Defendant argues that the evidence adduced at trial indicated that "if the incident occurred at all, it was at the initiation of the alleged victim" and, as such, was void of criminal intent. The evidence, however, demonstrates that Defendant, without permission, fondled and kissed A.M.T.'s breast. The fact that A.M.T. went to Defendant for advice on dating is without consequence. A.M.T. testified that Defendant's touching was unwelcome and that she asked him to stop. A rational juror could have concluded beyond a reasonable doubt that Defendant purposefully subjected her to sexual contact. Defendant's contention is without merit, and Defendant's fourth point, in all respects, is therefore denied.

The judgment of the trial court as to both Count I and II is affirmed.

MONTGOMERY, P.J., PREWITT, J., concur.

---

6. Section 566.090 states:

A person commits the crime of sexual misconduct in the first degree if he has deviate sexual intercourse with another person of the same sex or he purposely subjects another person to sexual contact or engages in conduct which would constitute sexual contact except that the touching occurs through the clothing without that person's consent.