STATE of Missouri,
Plaintiff–Respondent,

v.

Larry BELK, Defendant–Appellant.

No. 52984.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12. 1988.

Application to Transfer Denied
Nov. 15, 1988.

---

Lew Kollias, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of manslaughter and the resultant sentence as a prior offender by the court of 10 years imprisonment.  We affirm.

The victim was shot while operating his automobile in the City of St. Louis.  The evidence was sufficient to establish that defendant and two others, Eric Wallace and Bruce Sampson, agreed to participate in the robbery of someone to obtain a car for a trip to Illinois.  In the early morning hours they positioned themselves near a stop sign at an exit from Interstate 70. When the victim approached the stop sign, Sampson strolled slowly across in front of the automobile so that it remained stopped. Wallace or defendant, armed with a gun,

ran to the driver side of the stopped vehicle and announced a robbery. Wallace or defendant served as a lookout to warn of other persons in the vicinity. The victim resisted the attempt to take his vehicle and was shot, resulting in his almost immediate death. Defendant testified that he had refused to participate in the robbery and just happened to be in the vicinity when the robbery attempt and killing occurred. Defendant was charged with first degree murder occurring during the commission of a felony.

Defendant raises four issues on appeal. Initially he contends that the trial court erred in admitting a tape-recorded statement of Eric Wallace as substantive evidence of defendant's guilt. Wallace testified at the trial. His trial testimony exonerated defendant as a participant in the killing. Such testimony was directly contrary to his taped statement which stated defendant's involvement in the crime and that defendant had in fact done the shooting. The prosecution in redirect examined Wallace extensively on the statements he had made on the tape. Wallace's response was essentially that he had no recall of what he told the police although he did recall being questioned by them at the station. The prosecution then utilized one of the interrogating officers to qualify the tape as a prior inconsistent statement.

Sec. 491.074 RSMo 1986 provides:

" ... a prior inconsistent statement of any witness testifying in the trial of an offense under Chapter 565, 566, or 568 RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."

■ That section became effective on July 19, 1985. The crime here occurred on July 25, 1984. The trial was on February 23, 1987. Defendant contends that application of Sec. 491.074 to his trial is an *ex post facto* application of the law and unconstitutional. A law is retrospective if it changes the legal consequences of acts committed before its effective date. A law cannot be applied retrospectively if it changes ingredients of an offense or the ultimate facts

necessary to establish guilt or increases the punishment. *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) S.Ct. [1, 4]. The prohibition does not apply to changes in modes of procedure which do not affect matters of substance. *Id.* The statute here is a matter of procedure. It provides what can be utilized as evidence in a trial. It does not change the ingredients of the crime nor the ultimate facts necessary to prove the crime nor change the consequences of defendant's acts. *State v. Moutray*, 728 S.W.2d 256 (Mo.App.1987) [4]. Its application does not run afoul of the prohibition on *ex post facto* laws.

■ Defendant also asserts that he was denied his right to confrontation because of Wallace's inability to recall the circumstances surrounding the taking of the statement, the substance of the statement or even that he gave a tape-recorded statement. In *State v. Bowman*, 741 S.W. 2d 10 (Mo. banc 1987) the Supreme Court upheld the constitutionality of Sec. 491.074 against a challenge of lack of confrontation. It stated that the only necessary foundation is the inquiry as to whether the witness made the statement and whether the statement is true. It specifically did not express an opinion as to the use of such statements as substantive evidence where the witness does not admit making them or declines to submit to cross-examination. In *Bowman* the statements were upheld as substantive evidence even though the declarant stated at trial they were not true. It is not necessary, therefore, for the declarant to admit the truth of the statement in order to establish admissibility. We also do not believe it is necessary for the declarant, himself, to admit he made the statements if from his testimony and other evidence the fact that such statements were made is established. Here Wallace did not state that he did not make the statements, he said only that he could not recall making them and if he did he lied. He admitted having been questioned by police. He listened in court to portions of the tapes and did not deny that the voice was his, although he thought he sounded different on the tape. The testimony of the police offi-

cer of the circumstances and the timing of the recording was in accord with Wallace's testimony. The officer clearly testified that the recording was made of the questioning of Wallace and was an accurate recording of that questioning. The foundation was sufficient to allow the admission of the taped statement under the statute. Wallace did not refuse to be cross-examined. We find no error in the admission of the taped statement as substantive evidence.

■ Defendant next contends that the trial court erred in sentencing him under the prior offender act. The thrust of this contention is rather complex and involves the interplay between Sec. 565.031 RSMo 1978 (repealed L.1983, S.B. 276 Sec. 1) applicable to defendant's crime, Sec. 557.011.-1, RSMo 1986, Sec. 557.021.3 RSMo 1986, and Sec. 558.016, RSMo 1986. When the new criminal code was enacted effective January 1, 1979, the offense of manslaughter was not repealed by that code. L.1977, S.B. 60. It became therefore a non-code offense. *State v. Durley*, 603 S.W.2d 72 (Mo.App.1980). Sec. 557.011.1 provided that non-code offenses were to be punished in accordance with the statute defining the offense. Sec. 565.031 provided the punishment for manslaughter at the time of the offense here. The criminal code effective in 1979 did not provide for sentencing of prior offenders by the court. In Sec. 558.-016 it did provide for extended terms of imprisonment for persistent or dangerous offenders. Defendant was not charged as either a persistent or dangerous offender although by his own testimony he had three prior felony convictions. Sec. 557.-021.3 provided in 1979 and still does provide:

> "For the purpose of applying the extended term provisions of Sec. 558.016, RSMo, and for determining the penalty

for attempts and conspiracies, offenses defined outside of this code shall be classified as follows: ..." (Manslaughter would be a Class C felony).

Effective in 1981, Sec. 558.016 was amended to provide for sentencing by the court of prior offenders. Sec. 557.021.3 was not amended thereafter.

Defendant's contention is that the language of Sec. 557.021.3 precludes classifying non-code crimes except for the purpose of applying "extended term" provisions or determining penalties for attempts or conspiracies. Because judge sentencing for prior offenders is not an "extended term" provision manslaughter could not be classified under Sec. 557.021.3. It therefore is not covered by Sec. 558.016 which is restricted to those who have pleaded to or been found guilty of a B, C or D felony. We believe the question is whether "extended term provisions" as used in 557.-021.3 relates to all of Sec. 558.016 or only to those provisions authorizing extended terms for persistent and dangerous offenders.

Our major obligation is to determine the legislative intent. When Sec. 557.021.3 was originally enacted, the language involving its application was not restrictive in nature. It applied to all situations encompassed by Sec. 558.016. The code in 1979 did not provide for sentencing by the court of prior offenders.[1] The obvious purpose of 557.021.3 was to place non-code offenders into the same situation as code offenders.

The amendment of Sec. 558.016 served to restore judicial sentencing of prior offenders to the status existing prior to the 1979 code enactment. We are unable to conclude that the legislative intent was to create a dichotomy of treatment between non-code and code prior offenders. To accept defendant's position would require us to

---

1. This was probably the result of legislative oversight. The Committee to Draft a Modern Criminal Code in its October 1973 Proposed Criminal Code provided for court sentencing in all cases. CRIMINAL CODE § 2.060 (Committee to Draft a Modern Criminal Code) (Proposed Official Draft 1973). It also provided for extended terms for dangerous offenders. Sec.

3.020. Provisions for court sentencing of prior offenders was not provided in the Proposed Code because unnecessary. When jury sentencing was included in the 1979 Code, which Code was otherwise heavily based upon the Proposed Code, no provision for court sentencing of prior offenders was included.

conclude that the failure to amend Sec. 557.021.3 was an intent to create such a dichotomy and place upon that section a restriction it had not previously contained. We reject such a position. We believe "extended term provisions" was intended originally to relate to all provisions of Sec. 558.016 and that the amendment of Sec. 558.016 in 1981 did not change that. We find no error in the trial court sentencing defendant as a prior offender.

■ Defendant's final point was not raised until after oral argument and submission. It is based upon *State v. Anding*, 752 S.W.2d 59 (Mo. banc 1988). It is defendant's contention that his conviction cannot stand because he was either guilty of felony murder or he was guilty of nothing. The *Anding* case involved a clearly deliberate killing for which defendant hired the killer. Defendant was not present at the time of the killing. Because of then required "instructing down" a manslaughter instruction was given and defendant was convicted of that crime. That case does not state whether defendant objected to the instruction, was silent, or requested the instruction. The record here is clear that the defendant submitted a manslaughter instruction. "Instructing down" was not required. The court gave its own manslaughter instruction over the vigorous objection of the state. Defendant with equal vigor defended and urged the giving of such instruction. We do not read *Anding* as requiring that the manslaughter conviction be reversed where the error in giving the instruction is created solely by the actions of the defendant. The present issue was never raised at trial nor in this court until after submission.

■ In addition, *Anding* involved a situation where defendant was not present at the time of the killing. His guilt could only be premised upon his arranging for another to kill the victim, a matter of deliberate homicide or nothing. The jury acquittal of capital murder left no basis for conviction of any lesser offense as defendant did not participate in any acts at the scene of the crime. *State v. Martin*, 602 S.W.2d 772 (Mo.App.1980), relied upon by defendant, involved a circumstance where the death resulted from a fire. If defendant was not responsible for the fire then she was not responsible for the death. Her acquittal of felony murder was a finding that she was not responsible for the fire or the fire did not cause the death. In either event defendant was not responsible for the death. Here defendant was present when the killing occurred and was a participant in the activities which caused the death. The jury finding that defendant was not guilty of felony murder was not a finding that he did not participate in and cause the death of the victim. We find no plain error resulting in manifest injustice.

Judgment affirmed.

KAROHL, P.J., and KELLY, J., concur.