**STATE of Missouri, Respondent,**

v.

**Ernest L. FENTON, Appellant.**

**No. WD 50783.**

Missouri Court of Appeals,
Western District.

April 1, 1997.

ULRICH, Chief Judge, Presiding Judge.

Ernest L. Fenton appeals his conviction for felony stealing, section 570.030, RSMo 1986, a Class C felony, his Class A misdemeanor conviction for animal abuse, section 578.012, RSMo 1986, and his resultant enhanced sentence as a prior, persistent and Class X offender. Mr. Fenton also appeals the denial of his Rule 29.15 postconviction motion.[1] The convictions are affirmed. The sentences are vacated, and the case is remanded for resentencing. The denial of the Rule 29.15 postconviction motion is affirmed.

Ernest Fenton moved in with his brother, Troy Fenton and Troy's girlfriend, Dona, on March 4, 1994. The brothers used contraband drugs and drank alcoholic beverages until March 17, 1994, when Dona discovered intravenous needles in Troy's car. She became angry. When the brothers arrived home, Dona shot the radiator of Troy's car with a .45 caliber pistol. She testified she shot the radiator to prevent the brothers from leaving. Ernest, himself now angry with Dona's display of the firearm, threatened Dona and Troy and left the residence afoot.

The following day Ernest telephoned Troy and told him he was moving. Later, around midnight, a loud noise awakened Troy, who found his brother in the house yelling and threatening Dona. The brothers' sister and her husband, who had brought Ernest to the residence, left when the brothers began fighting. The fight escalated when one of the brothers produced a "buck" knife. When Ernest gained control of the knife, he stabbed Troy's dog, Mimi. Troy ran from the house. Ernest meanwhile put a load of clothes in the washing machine, telephoned his sister to come pick him up, and gathered various items in the house. When the Boone County Sheriff's office arrived, Ernest, Ernest's sister, and her husband were observed carrying bags of items to their car. The deputy sheriffs arrested the trio as they drove out of the driveway. Ernest was found in possession of a police scanner and jewelry belonging to Dona.

James C. Cox, Assistant Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jill C. LaHue, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., Presiding, and HANNA and SMART, JJ.

1. Although Mr. Fenton claims that he appeals the denial of his Rule 29.15 motion and that this is a joint appeal as provided by Rule 29.15(*l*), he asserts no point regarding denial of his postconviction remedy and, therefore, raises no issue for relief pertaining to his postconviction motion.

A jury found Ernest Fenton guilty of stealing[2] and misdemeanor animal abuse[3]. Because he had two prior felony convictions, the trial court determined him to be a prior, persistent and Class X offender.[4] As a "Class X" offender, the maximum punishment for the stealing offense was increased from seven to twenty years imprisonment. Recognizing that Mr. Fenton was now eligible to receive twenty years, the trial court reclassified the stealing offense from "Class C" to "Class B," applying section 557.021's definitions for Class B felonies[5]. With the stealing offense elevated to a "Class B" felony status, the trial court applied yet another "enhancement" statute that would require Mr. Fenton to serve 80 percent of the sentence.[6] The trial court sentenced him to five and one years imprisonment respectively for the felony stealing and animal abuse convictions.

Mr. Fenton claims the trial court made two errors in the appeal from his convictions. He claims the trial court plainly erred in classifying him as a Class X offender, thereby required to serve 80% of the assessed period of confinement. Related to the first challenge, he also contends the trial court plainly erred in reclassifying his "Class C" stealing conviction to a "Class B felony." He also contends the trial court erred in admitting Troy's testimony over objection that Ernest had asked him to commit various robberies.

■ The first issue is whether section 557.021.3 is applicable to Mr. Fenton's Class C felony stealing offense. The plain and ordinary meaning of the words used in section 557.021.3 is first considered, and no further construction is needed if the interpretation is clear and unambiguous. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992). Section 557.021.3 states:

For the purpose of applying the extended term provisions of section 558.016, RSMo, and the minimum prison term provisions of section 558.019, RSMo, and for determining the penalty for attempts and conspiracies, offenses defined *outside of this code* shall be classified as follows ... (emphasis added).

■ The statute by its own terms does not apply to all offenses—only those "defined outside the code." *State v. Wolf*, 930 S.W.2d 484, 485 (Mo.App.1996). The purpose of section 557.021.3 is not to define code offenses but to ascribe to non-code offenders the same plight as code offenders. *State v. Belk*, 759 S.W.2d 257, 260 (Mo.App. E.D.1988). Mr. Fenton's Class C felony of stealing is defined in Missouri's criminal code section 575.030, which does not contain any enhancement provisions. Section 557.021.3, therefore, is not applicable to stealing, a code offense, and the trial court erred in determining that the statute authorized reclassification of Mr. Fenton's Class C felony to a Class B felony. Similarly, Mr. Fenton is not subject to section 558.019, which only applied to certain Class A and B felonies, dangerous felonies, and any felony enhanced by operation of law, before the 1994 amendment, absent a reclassification or enhancement of the crime charged.

■ As his second point of error on appeal, Mr. Fenton claims that the trial court abused its discretion when it allowed Troy Fenton to testify over objection concerning whether he had asked Troy to commit various robberies in March of 1994. In order for evidence to be admissible, it must be relevant, logically tending to prove a fact in issue or corroborate relevant evidence that bears on the principal issue. *State v. Weaver*, 912 S.W.2d 499, 510 (Mo. banc 1995); *cert. denied*, — U.S. —, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). Mr. Fenton argues that his request of Troy to commit robberies is not relevant to any of the crimes charged.

2. § 575.030, RSMo 1986.

3. § 578.012, RSMo 1986.

4. § 558.016, RSMo Cum.Supp.1993.

5. A Class B felony prescribes punishment where the maximum term of imprisonment authorized exceeds ten years but is less than twenty years. Section 557.021.3, RSMo Cum.Supp.1993.

6. "If the defendant has three or more prior felony convictions committed at different times, the minimum prison term which the defendant must serve shall be eighty percent of his sentence." § 558.019.2, RSMo Cum.Supp.1993.

Mr. Fenton made numerous references to Troy's use of morphine and its deleterious effects on him. Troy was characterized as an out-of-control paranoid drug user who had attacked Mr. Fenton the night of the fight. Defense counsel also explained that Mr. Fenton had the jewelry and scanner because Troy requested that he buy drugs with the proceeds. Although Ernest's robbery requests arguably do not tend to prove any necessary facts, Mr. Fenton injected the issue of Troy's state of mind and motive for his morphine use. The doctrine of curative admissibility permits a party to present otherwise inadmissible evidence to explain or counteract a negative inference raised by an issue injected into the trial by the opposition. *Id.* Under the doctrine, a party must first have introduced evidence, even though it might be technically inadmissible evidence. *Id.* The admission of curative evidence is within the discretion of the trial court. *IMR Corp. v. Hemphill,* 926 S.W.2d 542, 545 (Mo. App. E.D.1996). The state, therefore, may offer otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects. Troy testified he used morphine largely to render himself useless to Mr. Fenton in the commission of robberies. This testimony, therefore, was relevant to contradict the negative stereotypical portrait of Troy as a drug addict. The admission of Mr. Fenton's robbery requests to Troy as a reason for Troy's morphine use was relevant and not unduly prejudicial under the state of mind exception to the hearsay rule. *Id.* The trial court did not abuse its discretion in permitting the state to offer Troy's testimony explaining why he used a controlled substance. Point 2 is denied.

Mr. Fenton's convictions are affirmed. The sentences are vacated, and the case is remanded to the trial court for resentencing. The denial of the Rule 29.15 postconviction motion is affirmed.

All concur.