STATE of Missouri, Respondent,

v.

Dennis O. HYMAN, Appellant.

No. WD 57616.

Missouri Court of Appeals,
Western District.

Feb. 6, 2001.

John M. Schilmoeller, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Attorney General, Jefferson City, for Respondent.

Before LOWENSTEIN, P.J.; LAURA DENVIR STITH and NEWTON, JJ.

NEWTON, Judge.

In separate incidents, Dennis O. Hyman abducted two girls, E.L. and H.J., both age 14, and forced them at knifepoint to go to the same abandoned house where he sodomized, raped, and sexually abused them. For his actions, the jury found Mr. Hyman guilty of six counts of forcible sodomy,[1] two counts of forcible rape,[2] one

---

1. Section 566.060, RSMo 1994 (now repealed), for five counts of forcible sodomy against E.L.; § 566.060, RSMo Supp.1993 (now repealed), for one count of forcible sodomy against H.J.

2. Section 566.030, RSMo 1994 (now repealed), for one count of forcible rape against E.L.; § 566.030, RSMo Supp.1993 (now repealed), for one count of forcible rape against H.J.

count of first degree sexual abuse,[3] and nine counts of armed criminal action.[4]

The trial court sentenced Mr. Hyman as a prior and persistent offender, and as a persistent sexual offender. On the sexual offenses, the trial court ordered concurrent prison terms of seven years for first degree sexual abuse, and eight life sentences for forcible sodomy and forcible rape. On the nine armed criminal action convictions, the trial court imposed nine concurrent life sentences. Also, the trial court ordered that the sentences on the sexual offenses be served consecutively to the armed criminal action sentences. As a result, Mr. Hyman faces imprisonment on two consecutive life terms.

On appeal, Mr. Hyman asserted that the three-year statute of limitations barred his nine convictions of armed criminal action. In addition, he contended that joinder of the two cases involving H.J. and E.L. was improper and that denial of severance for separate trials was an abuse of discretion. *Sua sponte*, we considered whether the sentence on first degree sexual abuse exceeded the statutory maximum.[5]

## I. FACTUAL BACKGROUND

In separate incidents seven weeks apart, Mr. Hyman grabbed two fourteen year-old girls as they waited for school buses in the same neighborhood. Mr. Hyman forced the girls at knifepoint to accompany him to the same fire damaged, abandoned house. Inside he subjected the girls to sexual acts after threatening them with the knife.

The crimes against H.J. occurred December 19, 1994. At 6:30 a.m., H.J. was walking to her school bus stop at 42nd and Garfield in Kansas City, Missouri, when a man grabbed her from behind, put a knife against her neck, and threatened to kill her if she screamed. The man forced H.J. to go to the fire damaged, vacant house on East 43rd Street. Inside the garage, still holding the knife, the man ordered H.J. to take off her pants, underwear, and shoes, and to walk up the stairs. Forcing H.J. to spread her legs, the man placed his mouth on her vagina. The man then made H.J. touch his penis with her hand. He inserted his penis in her vagina. At the conclusion, the man allowed H.J. to dress and to leave. H.J. ran home and told her mother. H.J. was treated at Children's Mercy Hospital.

The crimes against E.L. occurred February 9, 1995. At 6:40 a.m., E.L. was running to catch her school bus at 44th and Wabash. A man grabbed E.L. from behind and put his hand over her mouth when she started screaming. The man held a kitchen knife in his hand and had a ski mask over his face. The man took E.L. to the basement of the same abandoned house on East 43rd Street. After uttering sexual comments, the man ordered E.L. to pull down her panties and bend over the stairs. When she refused, the man put the knife to her neck and threatened to kill her. At some point, the man placed his mouth on E.L.'s vagina. Subjecting E.L. to numerous sexual acts, the man placed his penis in her vagina and in her anus. He inserted his finger in her

3. Section 566.100, RSMo Supp.1993 (now repealed), for one count of first degree sexual abuse, a class D felony, against H.J.

4. Section 571.015, RSMo 1994, for six counts of armed criminal action against E.L. and three counts against H.J.

5. This court issued an opinion reversing the case in part, affirming in part and remanding the case for resentencing and opined that the trial court had sentenced Mr. Hyman beyond the statutory maximum on the conviction of first degree sexual abuse. Thereafter, the state filed a motion for rehearing or transfer to the Missouri Supreme Court. We withdrew our previous opinion and granted rehearing on the issue of whether Mr. Hyman was sentenced within the statutory maximum for the class D felony of sexual abuse in the first degree. On further review, we affirm the conviction and sentence for the class D felony of sexual abuse in the first degree because Mr. Hyman was sentenced appropriately as a persistent offender. Section 558.016.7(4), RSMo 1994.

vagina and in her anus. The man forced his penis in E.L.'s mouth causing her to vomit. After the man allowed her to dress and to leave, E.L. went home and told her brother. The police took E.L. to Children's Mercy Hospital.

Neither H.J. nor E.L. could identify the man who had attacked them. Mr. Hyman was eventually identified through DNA profiling. The victims' medical examinations had produced semen samples from vaginal smears and clothing. Analyses of those samples linked Mr. Hyman to the crimes.

## II. LEGAL ANALYSIS

### A. STATUTE OF LIMITATIONS

Asserting a bar by the three-year statute of limitations, Mr. Hyman seeks acquittal of his nine convictions of armed criminal action. The charges against Mr. Hyman were indeed brought more than three years after commission of the crimes. The crimes occurred in December 1994 and in February 1995; the grand jury returned the indictment in June 1998 and the re-indictment in September 1998. The prosecutions began four months and nine months after the three-year limit had expired.

In response to Mr. Hyman's motion to dismiss, the trial court dismissed two counts of kidnapping, class B felonies, and a connected count of armed criminal action. Allowing the charges of forcible sodomy, forcible rape, and sexual abuse to stand, the trial court relied on the ten-year statute of limitations applicable to sexual offenses against minors. But the trial court refused to dismiss the armed criminal action charges underlying the charges on the sexual offenses. According to the

trial court's reasoning, the armed criminal action charges were so intertwined with the sexual offenses that the ten-year statute should apply.

Criminal prosecution of felonies can be subject to no time limit, a three-year limit, or a ten-year limit. The general statute of limitations sets no time limit for prosecuting murder or any class A felony, but limits prosecuting any other felony to three years. Section 556.036, RSMo Supp. 1999,[6] provides in pertinent part:

**Section 556.036. Time limitations**

1. A prosecution for murder or any class A felony may be commenced at any time.

2. Except as otherwise provided in this section, prosecutions for other offenses must be commenced within the following periods of limitation:

(1) For any felony, three years[.]

Further, a special statute of limitations allows ten years for prosecutions of sexual offenses involving minors. Section 556.037, RSMo Supp.1999,[7] provides:

**Section 556.037. Time limitations for prosecutions for sexual offenses involving a person eighteen years of age or under.**

The provisions of section 556.036, to the contrary notwithstanding, prosecutions for unlawful sexual offenses involving a person eighteen years of age or under must be commenced within ten years after the victim reaches the age of eighteen.

Mr. Hyman argues that the three-year statute of limitations in § 556.036.2(1) applied to his armed criminal action charges. Noting that armed criminal action is an unclassified felony, he asserts that it is not a class A felony that can be prosecuted at

6. The 1997 and 1999 amendments to the general statute of limitations in § 556.036 made no changes to the time limitations in subsections 1 and 2.

7. Under the earlier version, § 556.037, RSMo 1994 (now repealed), provided that "prosecutions for unlawful sexual offenses involving a person seventeen years of age or under must be commenced within ten years after the commission of the offense." The sexual offenses charged against Mr. Hyman were brought within the ten-year limitation under both versions. *See Longhibler v. State,* 832 S.W.2d 908, 910–11 (Mo. banc 1992).

any time under § 556.036.1. Mr. Hyman concedes that the ten-year limitation in § 556.037 applied to his charges of forcible sodomy, forcible rape, and sexual abuse against the fourteen-year-old victims. But he contends that armed criminal action is not a sexual offense within the scope of the ten-year statute of limitations.

Conversely, the state contends that armed criminal action is a class A felony not subject to any time limit on prosecution by virtue of § 556.036.1. In support, the state analogizes its contention with the holding of *State v. Cunningham*[8]. *Cunningham* held that prosecution of forcible rape, an unclassified felony, was not barred by the three-year statute of limitations. Under the *Cunningham* court's reasoning, because the unclassified felony of forcible rape carried its own punishment that included life imprisonment, forcible rape was the equivalent of a class A felony. Thus it concluded that forcible rape was a class A felony not subject to any time limitation on prosecution by virtue of § 556.036.1. To reach that conclusion, the *Cunningham* court relied on § 557.021(3)(1)(a) that deemed a noncriminal code offense to be a class A felony if its authorized penalty included death, life imprisonment, or imprisonment for twenty years or more.

We find the reasoning of *Cunningham* to be flawed. The flaws result from the *Cunningham* court's reliance on § 557.021, RSMo 1994, which provides in pertinent part:

**Section 557.021. Classification of offenses outside this code**

1. Any offense defined outside this code which is declared to be a misde-

meanor without specification of the penalty therefor is a class A misdemeanor.

2. Any offense defined outside this code which is declared to be a felony without specification of the penalty therefor is a class D felony.

3. For the purpose of applying the extended term provisions of section 558.016, RSMo, and the minimum prison term provisions of section 558.019, RSMo, and for determining the penalty for attempts and conspiracies, offenses defined outside of this code shall be classified as follows:

(1) If the offense is a felony:

(a) It is a class A felony if the authorized penalty includes death, life imprisonment or imprisonment for a term of twenty years or more[.]

First, the *Cunningham* court misapplied § 557.021 to a code offense when it is specifically directed to noncode offenses. The plain language throughout this section confines its application to offenses not defined in the criminal code. Section 557.021 is entitled "Classification of offenses outside this code." Each of its three subsections explicitly refers to "offense[s] defined outside this code." By its own terms, the statute does not apply to all offenses—only those "defined outside this code."[9] Code offenses are those included in the Criminal Code of 1977, Senate Bill No. 60, that became effective January 1, 1979. Offenses defined outside the code are those not included in and not repealed by the Criminal Code.[10] Consequently, the noncode offenses—to which § 557.021 applies—are the offenses that are not defined in the Criminal Code and that have remained in effect after January 1, 1979.[11]

---

8. *State v. Cunningham*, 840 S.W.2d 252, 253 (Mo.App. E.D.1992).

9. *State v. Fenton*, 941 S.W.2d 810, 812 (Mo. App. W.D.1997); *State v. Wolf*, 930 S.W.2d 484, 485 (Mo.App. E.D.1996).

10. *State v. Danforth*, 654 S.W.2d 912, 919 (Mo.App. W.D.1983); *State v. Durley*, 603 S.W.2d 72, 73 (Mo.App. S.D.1980).

11. Section 556.031.2, RSMo 1994, provides: "Offenses defined outside of this code and not repealed shall remain in effect, but unless otherwise expressly provided or unless the context otherwise requires, the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such offenses."

Further, the *Cunningham* court apparently confused noncode with unclassified, code offenses. Mr. Cunningham's conviction of forcible rape arose from an amendment to an offense defined in Senate Bill No. 60 that was a part of the 1977 Criminal Code. Under that version, the code offense of forcible rape was designated a felony, but bore no classification as a class A, B, C, or D felony.[12] Instead, the offense defined its own penalty: "the authorized term of imprisonment . . . is life imprisonment or a terms of years not less than five years." Although forcible rape was an unclassified, code offense, the *Cunningham* court designated it a class A felony for statute-of-limitations purposes. In doing so, the *Cunningham* court went beyond the stated purpose of § 557.021.3, which contains nothing about limitations on prosecutions.[13]

■ Next, the *Cunningham* court misunderstood the purpose of § 557.021.3. Section 557.021.3 explicitly delineates its purpose: To classify noncode offenses for applying statutory sentence enhancements and minimum prison terms and for determining the penalty for attempts and conspiracies. Section 557.021.3 has no applicability beyond its stated purpose.[14] The purpose of § 557.021.3 is not to define code offenses but to ascribe to noncode offenders the same plight as code offenders.[15]

■ We reject the holding of *Cunningham* and find it to be inapplicable to time limits on prosecuting armed criminal action. As set forth in § 571.015.1, RSMo 1994, armed criminal action is a code offense that is specifically defined in the 1977 Criminal Code. The armed criminal action statute prescribes its own penalty by setting a minimum sentence at "a term of not less than three years." Because armed criminal action has no classification and includes its own penalty, it is an unclassified code offense.[16] Although armed criminal action lacks a maximum penalty, conviction of the offense carries a sentence of any term of years above the statutory minimum, including a life sentence.[17] Nevertheless, an armed criminal action conviction constitutes a conviction of an unclassified felony that cannot be designated a class A felony in the judgment.[18]

For several reasons, § 557.021, which controls offenses defined outside the criminal code, has no bearing on the time limits for prosecuting armed criminal action. First, armed criminal action qualifies as a code offense to which § 557.021 is inapplicable. Next, its status as an unclassified felony that provides its own penalty, fails to bring armed criminal action within the scope of § 557.021.[19] Finally, § 557.021.3 provides no authority for reclassifying

12. Section 566.030, RSMo Supp.1982 (now repealed).

13. The *Cunningham* court may have reached the right result for the wrong reason. In *Cunningham,* 840 S.W.2d at 252–53, the defendant was charged ten years after the crime with aggravated forcible rape that was expressly a class A felony under the applicable statute and that was not subject to any time limit on prosecution. After being convicted of the lesser included offense of forcible rape, an unclassified felony, the defendant asserted that the three-year statute of limitations barred that conviction. The facts fail to indicate whether the defendant requested the instruction on the lesser offense. If that were the case, the defendant would have waived the statute of limitations defense, which is nonjurisdictional. *State v. Leisure,* 796 S.W.2d 875, 879 (Mo. banc 1990).

14. *See Weeks v. State,* 785 S.W.2d 331, 333 (Mo.App. W.D.1990).

15. *Fenton,* 941 S.W.2d at 812; *State v. Belk,* 759 S.W.2d 257, 260 (Mo.App. E.D.1988).

16. *State v. Williams,* 18 S.W.3d 461, 470 (Mo. App. E.D.2000); *State v. Norton,* 949 S.W.2d 672, 678 (Mo.App. W.D.1997).

17. *State v. Bolds,* 11 S.W.3d 633, 637 (Mo. App. E.D.1999).

18. *Williams,* 18 S.W.3d at 470.

19. *Cf. Thurston v. State,* 791 S.W.2d 893, 895 (Mo.App. E.D.1990)(holding that § 557.021.2, which declares a noncode felony to be a class D felony for penalty purposes, is inapplicable to armed criminal action).

armed criminal action as a class A felony for statute-of-limitations purposes.

We conclude that armed criminal action is not a class A felony. The legislature neither classified armed criminal action as a class A felony nor passed applicable statutes for reclassifying it as such. Section 556.036.1 provides: "A prosecution for murder or any class A felony may be commenced at any time." Because armed criminal action is not murder or a class A felony, the provisions placing no time limit on prosecutions do not apply.

We next consider the applicability of the special ten-year statute of limitations in § 556.037, which concerns unlawful sexual offenses against minors. In refusing to dismiss the armed criminal action charges underlying Mr. Hyman's charges on the sexual offenses, the trial court applied the ten-year statute. The applicability of § 556.037 depends on whether armed criminal action is an "unlawful sexual offense."

 We first consider the interrelationship between armed criminal action and its underlying felony. Defined in Chapter 571 entitled "Weapons Offenses," armed criminal action is the commission of any felony by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon.[20] By this definition, armed criminal action incorporates all the elements of the underlying felony.[21]

Having no independent existence, armed criminal action requires conviction of an underlying felony.[22] Armed criminal action may be based on any felony not specifically excluded, not just on sexual felonies.[23] Yet whatever the underlying felony may be, armed criminal action carries a separate, distinct, and additional punishment. Each time a dangerous instrument is used in effectuating a felony, a separate crime of armed criminal action occurs.[24]

For purposes of the ten-year statute of limitations in § 556.037, is armed criminal action an unlawful sexual offense when it is based on a sexual offense? Two cases offer guidance by analogy. First, *State v. Barbee*[25] considers whether armed criminal action is a sexual offense for purposes of the mandatory consecutive sentencing statute.[26] By virtue of § 558.026.1, when multiple convictions of sexual offenses and nonsexual offenses arise from the same conduct, the sentences on the sexual offenses must be consecutive to those on the nonsexual offenses. The majority in *Barbee* concluded that armed criminal action is a nonsexual offense for purposes of imposing mandatory consecutive sentences. To reach that conclusion, the majority reasoned that armed criminal action and the sexual offenses of forcible rape and forcible sodomy constitute separate crimes under a double jeopardy analysis: armed criminal action requires proof of an element that forcible rape and forcible sod-

20. Section 571.015.1, RSMo 1994.

21. *State v. Danikas*, 11 S.W.3d 782, 789 (Mo. App. W.D.1999).

22. *See State v. Albanese*, 920 S.W.2d 917, 924 (Mo.App. W.D.1996).

23. *See State v. Rice*, 937 S.W.2d 296, 300 (Mo.App. E.D.1996).

24. *State v. Adams*, 741 S.W.2d 781, 784 (Mo. App. E.D.1987).

25. *State v. Barbee*, 822 S.W.2d 522, 527 (Mo. App. E.D.1991).

26. Section 558.026.1, RSMo Supp.1999. The 1995 amendment made no changes to subsection 1 of § 558.026, which provides: "1. Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences."

omy do not, namely, the use, assistance, or aid of a dangerous instrument or deadly weapon. The majority in *Barbee* was convinced that the statutory language deprives the trial court of discretion to order concurrent sentences on the convictions of armed criminal action and sexual offenses.[27] Writing in 1991, the majority called on the legislature to make a change, if warranted. To date, the mandatory consecutive sentencing provisions in § 558.026.1 remain unchanged.

Second, *State v. Juarez*[28] addresses whether the statutory defense of duress applies to armed criminal action when the weapon was used to commit the underlying offense of second degree murder. According to its statutory definition, the duress defense is available as an affirmative defense in any criminal case, but is not available "as to the crime of murder."[29] The *Juarez* court rejected the argument that, since armed criminal action could not be committed without committing the underlying felony of murder and since both offenses formed a part of the same transaction, the duress defense is not available to either offense. To the contrary, the *Juarez* case holds that the duress defense applies to armed criminal action even though it is inapplicable to the underlying felony of murder. In its reasoning, the *Juarez* court considered the statutory language and the separate offense issue. For the *Juarez* court, the language in § 562.071.2(1), "[t]he defense of 'duress' . . . is not available as to the crime of murder," clearly and distinctly states that duress shall be a defense to all crimes except the crime of murder. The court further found that armed criminal action

and second degree murder are separate offenses: each survives the double jeopardy analysis and each carries a separate and distinct sentence. The *Juarez* court accordingly concluded that § 562.071.2(1) unambiguously manifests the legislature's intent to allow duress as an affirmative defense to armed criminal action.

Like Mr. Hyman's case, both *Barbee* and *Juarez* involve applying the armed criminal action statute to other statutes. In their analyses, both cases view armed criminal action as an offense separate from its underlying felony. In *Barbee*, armed criminal action when joined with sexual felonies retains its character as a nonsexual offense under the mandatory consecutive sentencing statute.[30] *Juarez* holds that the statutory duress defense applies to armed criminal action, but not to the underlying felony of murder.[31] Both cases suggest that armed criminal action becomes a separate offense when it passes the double jeopardy analysis. In each case, the plain language of the statutes reflects a clear legislative mandate for the result reached.

 We conclude that armed criminal action is not an "unlawful sexual offense" to which the ten-year limitation in § 556.037 applies. Armed criminal action appears in the chapter defining weapons offenses; but forcible rape, forcible sodomy, and first degree sexual abuse appear in the sexual offenses chapter.[32] In spite of its interrelationship with its underlying felony, armed criminal action retains its separate identity. Armed criminal action can be joined to any felony. As a separate offense, armed criminal action carries its

**27.** The holding in *Barbee*, 822 S.W.2d at 527, quells Mr. Hyman's challenge in Point II to the consecutive life sentences imposed on his convictions of the sexual offenses and of armed criminal action.

**28.** *State v. Juarez*, 26 S.W.3d 346, 362–63 (Mo.App. W.D.2000).

**29.** Section 562.071.2(1), RSMo 1994.

**30.** *Barbee*, 822 S.W.2d at 527.

**31.** *Juarez*, 26 S.W.3d at 362–63.

**32.** *Cf. Longhibler v. State*, 832 S.W.2d 908, 910 (Mo. banc 1992)(in which the ten-year statute of limitations in § 556.037 applied to counts of child sexual abuse, but the general three-year limitation in § 556.036.2(1) applied to a jointly charged count of child physical abuse).

own penalty, sentence enhancement, and minimum sentencing provisions. With forcible rape, forcible sodomy, and class D sexual abuse as the underlying felonies, armed criminal action supplies a distinct weapons element and satisfies double jeopardy prohibitions. *Barbee*[33] and *Juarez*[34] demonstrate that armed criminal action does not become a part of its underlying felony for purposes of applying other statutes. The foregoing reasons convince us that the special ten-year statute of limitations does not apply to Mr. Hyman's armed criminal action convictions even though the underlying felonies are sexual offenses.

Having eliminated the statutes of limitations providing no time limit and a ten-year limit on prosecutions, we return to the general statute of limitations in § 556.036.2(1): "[P]rosecutions for other offenses must be commenced within the following periods of limitation ... [f]or any felony, three years." Armed criminal action is an offense other than murder or a class A felony. Armed criminal action qualifies as "any felony." We find, therefore, that the three-year statute of limitations controls. If deemed appropriate, we call on the legislature to make any warranted corrections.

The nine charges of armed criminal action against Mr. Hyman were unquestionably brought after the three-year limitation had expired. The trial court erred in refusing to dismiss those nine counts of armed criminal action. Granting Mr. Hyman's point on appeal, we reverse his nine convictions of armed criminal action and vacate the corresponding life sentences.

**33.** *Barbee*, 822 S.W.2d at 527.

**34.** *Juarez*, 26 S.W.3d at 362–63.

**35.** *State v. Pasteur*, 9 S.W.3d 689, 693 (Mo. App. S.D.1999).

**36.** *Id.*

**37.** Rule 23.05; § 545.140.2, RSMo 1994.

**B. JOINDER AND SEVERANCE**

The re-indictment and the information in lieu of indictment joined the offenses against E.L. with those against H.J. Mr. Hyman accuses the trial court of improper joinder. In the alternative, he claims that the trial court erred in denying his motion to sever and in refusing to order separate trials for the offenses against each victim.

Appellate review of these claims of improper joinder and refusal to sever requires a two-part analysis: first, to determine whether joinder is proper as a matter of law, and then, if joinder is proper, to determine whether denial of the motion to sever constitutes an abuse of discretion.[35] Joinder addresses what crimes can be charged in a single proceeding, while severance assumes that joinder is proper and gives the trial court discretion to determine whether substantial prejudice would result if the charges were tried together.[36]

Multiple offenses are properly joined in the same indictment or information if they are of the same or similar character, or if they are based on acts a part of the same transaction, or if they are part of a common scheme or plan.[37] For proper joinder, the manner in which the crimes where committed must show that the same person is likely to have committed all crimes charged.[38] The use of similar or comparable tactics sufficiently establishes that the offenses are of a similar character for the purpose of joinder.[39] Nonexclusive factors showing similar tactics include commission of the same type of offenses, victims of the same sex and age group, offenses occurring at the same location, offenses closely related in time.[40]

**38.** *State v. Meder*, 870 S.W.2d 824, 828 (Mo. App. W.D.1993).

**39.** *State v. Hemme*, 969 S.W.2d 865, 869 (Mo. App. W.D.1998).

**40.** *See State v. Conley*, 873 S.W.2d 233, 238 (Mo. banc 1994); *Hemme*, 969 S.W.2d at 869.

Here, Mr. Hyman argues that details in the sexual attacks on E.L. and H.J. demonstrate improper joinder. In support, he notes that the attacker's conversations with the victims differed; that in one incident the attacker wore a ski mask; and that threats to kill the victims and use of the knife came at different stages during the separate attacks on each victim.

■ Contrary to Mr. Hyman's argument, the tactics used in the sexual attacks on the two victims appear strikingly similar. The crimes involved sexual offenses against two fourteen-year-old girls that occurred in the same neighborhood seven weeks apart. Both victims were abducted at the same time of day as they were going to their school bus stops. The attacker grabbed both victims from behind. During both incidents, the attacker threatened the victims with death and wielded a knife. Both victims were forced to go to the same fire-damaged, abandoned house where the attacker ordered them to undress from the waist down. The sexual attacks took place on the stairs and involved multiple acts of sodomy and rape. At the end, the attacker allowed both victims to dress and to leave. The similarities among the tactics used during the two sexual attacks make it likely that Mr. Hyman committed all sexual offenses charged.[41] We conclude that the joinder of the crimes from the two incidents was proper as a matter of law.

Having determined that joinder is proper, we now determine whether the trial court's denial of the motion to sever and refusal to order separate trials amount to an abuse of discretion.

■ The trial court has discretion to sever multiple offenses jointly charged in an information or indictment when a party makes a particularized showing of substantial prejudice in a written motion to sever.[42] Substantial prejudice means "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal."[43] In assessing the propriety of refusal to sever the offenses for trial, the relevant issues are the number of offenses charged, the complexity of the evidence, and the jury's ability to distinguish the evidence and to apply the law intelligently to each offense.[44]

■ Mr. Hyman contends that he made a showing of substantial prejudice in his motion to sever. He asserts that evidence from the charges involving E.L. impaired his ability to defend himself against the charges involving H.J. Nevertheless, Mr. Hyman's allegation is a mere generalized complaint that he might have had a better chance for acquittal in separate trials. This complaint fails to make any particularized showing of substantial prejudice.[45]

This case involves separate sexual attacks on two victims. At trial the victims'

---

41. In the following cases, Missouri courts found proper joinder of offenses involving illicit sexual conduct with minors because the tactics used showed the offenses to be of the same or similar character: *Conley*, 873 S.W.2d at 238 (Multiple counts of sodomy and sexual assault on five boys ages 12 and under occurred during a two-year period at the same group home where the defendant was a houseparent.); *Pasteur*, 9 S.W.3d at 694 (The defendant subjected two female high school students to child endangerment and sexual misconduct by touching their breasts and by using his position as an educator to gain their trust.); *Henme*, 969 S.W.2d at 869–870 (Acts of rape, sodomy, and deviate sexual assault against two female teenagers occurred within a three-month period after the defendant

lured the victims into a bedroom, removed their clothing, disregarded their objections, performed deviate sexual intercourse, and badgered them for sexual intercourse); *Meder*, 870 S.W.2d at 829 (The defendant raped his three preschool daughters in the same house within a two-week period and threatened to kill them after the rapes.).

42. Rule 24.07; § 545.885.2, RSMo 1994.

43. Section 545.885.2, RSMo 1994.

44. *Pasteur*, 9 S.W.3d at 695.

45. *See State v. Perkins*, 826 S.W.2d 385, 389 (Mo.App. E.D.1992).

testimony was straightforward and relatively short. Each victim testified succinctly about the sexual crimes perpetrated against her. Nothing indicates that the jury could not and did not consider the crimes separately.

For those reasons, we detect no abuse of discretion in denying Mr. Hyman's motion to sever and in refusing him separate trials. Mr. Hyman's point concerning joinder and severance is denied.

### III. CONCLUSION

We reverse Mr. Hyman's nine convictions of armed criminal action and vacate the corresponding life sentences. We affirm his remaining convictions on the sexual offenses.

LOWENSTEIN and LAURA DENVIR STITH, JJ., concur.