**STATE of Missouri, Respondent,**

**v.**

**Victor M. CRUZ, Appellant.**

**No. WD 58943.**

Missouri Court of Appeals,
Western District.

Oct. 9, 2001.

As Modified Dec. 4, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 4, 2001.

Application for Transfer Sustained
Jan. 22, 2002.

Case Retransferred April 23, 2002.

Court of Appeals Opinion Readopted
April 30, 2002.

Sarah N. Weber, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for Respondent.

Before EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Victor M. Cruz appeals the judgment of his jury conviction in the Circuit Court of Jackson County for armed criminal action (ACA), § 571.015.1,[1] based on his underlying felony conviction for second degree assault, § 565.060.1(5).

In his sole point on appeal, the appellant claims that the trial court plainly erred in giving Instruction No. 9, the State's verdict director submitting the offense of ACA, without hypothesizing a culpable mental state of "knowingly," because it violated due process and MAI–CR 3d 332.02,[2] the mandatory instruction for submitting ACA, and its applicable Notes on Use.

We affirm.

## Facts

On the evening of May 6, 1998, the appellant received a phone call from his stepfather, James Mygatt, who was upset over an incident that had occurred earlier that day between Mygatt and the appellant's mother. Mygatt was recently divorced from the appellant's mother, having raised the appellant since he was twelve years old. Because Mygatt was upset and screaming at the appellant over the phone, the appellant decided he would try to calm him down in person. Just before 10:00 p.m., the appellant drove to Mygatt's father's residence located at 626 Fuller, Kansas City, Jackson County, Missouri, where

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. All references to this instruction are to MAI–CR 3d 332.02 [10–1–98], unless otherwise indicated.

Mygatt was staying. Mygatt was not at the home when the appellant arrived, so he waited. Once Mygatt arrived, the men began arguing in the front yard about Mygatt's verbal dispute with the appellant's mother. The arguing escalated into a shoving match between the men. Knowing that Mygatt kept guns in the house, the appellant went to his car, pulled out a shotgun, and loaded it. Mygatt said to the appellant several times, "Did I ever do you wrong?" The appellant pointed the shotgun at Mygatt, threatened to kill him, and then fired a shot into the ground near Mygatt's feet. The appellant then yelled, "I'll kill all you mother fuckers," and fired a second shot, striking Mygatt in the foot.

Upon hearing the shots, two neighbors, Gary Duncan and Steve Sparks, went to Mygatt's residence to see what had happened. They observed the appellant get into his car and begin to back down the road. As he neared the two men, the appellant lifted his gun off of the passenger seat and said to them, "Do you want some?" The appellant then drove to a nearby house where he called the police to report the shooting and told them to meet him at his house in Raytown. He then drove home.

Several officers from the Kansas City Police Department (KCPD) arrived at the scene of the shooting at about 10:10 p.m. in response to a 911 call. When the officers arrived, Mygatt was sitting on the porch, with his bleeding foot propped up on the table, being tended to by the ambulance crew. Before the officers could take his statement, Mygatt was loaded into the ambulance for transport to Independence Regional Hospital for treatment. The officers took statements about the shooting from Duncan, Sparks, and Ralph Mygatt, the victim's father. During their inspection of the crime scene, the officers found two spent shotgun shells, one live shotgun

shell, and a hole in the ground which appeared to have been made by a shotgun blast.

Detective Jan Wallace of the KCPD was dispatched from the crime scene to the emergency room of Independence Regional Hospital to take Mygatt's statement. According to Mygatt's statement to Detective Wallace, when he arrived at the home, the appellant was there waiting for him. They then proceeded to argue. During the argument, the appellant went to his car, obtained a 12 gauge shotgun, walked back toward Mygatt, pointed the shotgun at him and threatened to kill him. The appellant then pointed the gun down toward the ground in Mygatt's direction and fired two shots, the second of which struck Mygatt in the foot.

As a result of the appellant's call to the police, a pick-up order was issued for him, to which Officer Katherine Kennedy responded. Upon arriving at the appellant's home, she found no one there, so she waited about ten to fifteen minutes. The appellant eventually arrived home around 10:20 p.m. and was ordered from his car by Officer Kennedy. After he exited his vehicle, Officer Kennedy handcuffed him and told him that he was being arrested for assault. As she handcuffed the appellant, he blurted out, "I shot my stepfather because he was hitting my car's windshield." Officer Kennedy found an unloaded shotgun and some shotgun shells in the passenger seat of the appellant's car. The next day, the appellant gave a statement to police that Mygatt had fired at least seven shots at him from two guns, and he had only fired his shotgun to keep Mygatt away.

A felony complaint was filed in the Circuit Court of Jackson County on May 7, 1998, charging the appellant with first degree assault, § 565.050; ACA, § 571.015; and two counts of unlawful use of a weap-

on, § 571.030.1(4). A first amended information was filed on July 13, 1998, adding a fifth count of unlawful possession of a short-barreled shotgun, § 571.020.1(4).[3] A second amended information was filed on April 19, 2000, charging the appellant in three counts with second degree assault, § 565.060; ACA, § 571.015; and unlawful use of a weapon, § 571.030.1(4).

The appellant's case proceeded to a jury trial before the Honorable John C. Andrews on June 13–14, 2000. At trial, Mygatt refused to testify, attempting to invoke a Fifth Amendment right to remain silent. Upon questioning by the State, out of the presence of the jury, he explained that he did not want to testify against the appellant because he would not "do anything to hurt any of [his] family members ... This kid is like a part of me." The prosecutor explained to Mygatt that he could not assert a Fifth Amendment privilege, since none of his answers would in any way incriminate him. The trial court agreed, finding that Mygatt had not proven that he had "a right to take the Fifth Amendment in this case." After the jury was returned, Mygatt again stated that his "decision [was] to take the Fifth." The prosecutor then asked the court to declare Mygatt a hostile witness, which request was granted.

When asked about the events of May 6, 1998, Mygatt consistently testified either, "I don't remember," or "I don't recall." As a result, the State sought to impeach Mygatt's testimony using his testimony from the preliminary hearing, during which he testified, in pertinent part:

I saw [the appellant] at my father's address and he parked the car and he got out and started chewing my ass for not stopping and using my head and thinking instead of listening to other people.

Telling one thing, led to another, a discussion between me and him, and him and my father was out there, you know, telling us to calm down, to keep the noise down. And somewhere along the line, tempers flared and I ended up shot.

When asked whether his preliminary hearing testimony was correct, Mygatt testified that he was not sure.

The appellant did not take the stand, nor did he call any witnesses in his defense. At the close of the State's evidence and at the close of all the evidence, the appellant filed motions for judgment of acquittal, which were overruled. The jury returned a verdict of guilty as to second degree assault and ACA, and not guilty as to unlawful use of a weapon. The jury recommended that the appellant receive a fine in an amount to be determined by the court for second degree assault and three years imprisonment for ACA.

The appellant filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial on July 7, 2000, which was overruled on August 11, 2000. The trial court sentenced the appellant to a fine of $2,500 for second degree assault and three years imprisonment for ACA.

This appeal follows.

## I.

In his sole point on appeal, the appellant claims that the trial court plainly erred in giving Instruction No. 9, the State's verdict director submitting the offense of ACA, without hypothesizing a culpable mental state of "knowingly," because it violated due process and MAI–CR 3d 332.02, the mandatory instruction for submitting ACA, and its Notes on Use. Specifically, he claims that, pursuant to § 562.021, in order to convict him of ACA,

---

**3.** The legal file does not indicate when the    original information was filed.

under § 571.015.1, the jury was required to, *inter alia,* find that he "knowingly" committed the underlying offense of second degree assault and that by failing to instruct the jury in Instruction No. 9 in that respect, the jury was allowed to convict him on the lesser culpable mental state of "recklessly," the *mens rea* the jury was required to find in order to convict him of second degree assault.

The record reflects that appellant's trial counsel objected during the instruction conference to the giving of Instruction No. 9 on the basis that it was not supported by the evidence, which objection he renewed in his motion for new trial. However, the appellant concedes that counsel failed to specifically object, as required by Rule 28.03,[4] to the giving of the instruction on the basis that it omitted the requisite *mens rea* of "knowingly," and requests plain error review, under Rule 30.20. In *State v. Hibler,* this court set forth the plain error standard of review for instructional error:

> Giving the language in [Rule 30.20] its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether on the face of the claim, plain error has, in fact, occurred.... Plain errors are those which are evident, obvious and clear. If plain error is found on the face

of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

> Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and caused manifest injustice or miscarriage of justice. The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice.

21 S.W.3d 87, 96 (Mo.App.2000) (citations omitted). Thus, applying this standard, we must first determine whether it was obvious error for the trial court to give Instruction No. 9, the verdict director submitting ACA, without hypothesizing a *mens rea* of "knowingly," and, if it was, whether it affected the jury's verdict to the extent that manifest injustice or a miscarriage of justice resulted.

If there is an MAI–CR instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury based upon that instruction. Rule 28.02(c). Here, there is no dispute that the trial court, in submitting the charge of ACA, was required to submit

---

4. All rule references are to the Missouri Rules of Criminal Procedure (2001), unless otherwise indicated. Rule 28.03 states:

   Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto

before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

based upon MAI–CR 3d 332.02. It reads, in pertinent part:

> As to Count ——, if you find and believe from the evidence beyond a reasonable doubt:
>> First, that defendant (committed) (is guilty of) the offense of [*name of the "underlying" felony* ], as submitted in Instruction No. ——, and
>> Second, that defendant knowingly committed that offense (by)(or) (with) (or) (through) the (use)(or) (assistance) (or)(aid) of a (dangerous instrument) (deadly weapon), then you will find the defendant guilty under Count —— of armed criminal action.

MAI–CR 3d 332.02. With respect to paragraph second of the instruction, Note on Use 2 provides:

> Since the statute does not prescribe a culpable mental state, the crime is committed if the defendant acted "knowingly." The mental state of "recklessly" is not sufficient. Section 562.021, RSMo Supp.1997.

Thus, pursuant to MAI–CR 3d 332.02 and its Note on Use 2, paragraph second of the State's verdict director submitting ACA, Instruction No. 9, was required to include a *mens rea* of knowingly with respect to the commission of the underlying offense, assault in the second degree. However, Instruction No. 9 did not so instruct. Rather, it reads, in pertinent part:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>> First, that defendant committed the offense of assault in the second degree as submitted in Instruction No. 7, and
>> Second, that defendant committed the offense by or with or through the use, assistance or aid of a deadly weapon, then you will find the defendant guilty under Count II of armed criminal action.

The appellant contends that the omission of "knowingly" in paragraph second of Instruction No. 9 violated MAI–CR 3d 332.02 and Note on Use 2 and was plain error, requiring reversal.

■ Although recognizing the mandates of MAI–CR 3d 332.02 and Note on Use 2, with respect to instructing on the culpable mental state of knowingly, the State contends that Instruction No. 9's failure to instruct on a *mens rea* of knowingly was not plain error inasmuch as that issue was not in dispute at trial in that the culpable mental state of knowingly only went to the appellant's use of the gun in committing the underlying offense of second degree assault, which use he admitted. While we would agree with the State that a trial court does not plainly err in failing to instruct on an issue not in dispute at trial, *State v. Hill,* 970 S.W.2d 868, 872 (Mo.App. 1998), the appellant contends that the issue of whether he acted knowingly, as contemplated by MAI–CR 3d 332.02, Note on Use 2, and the substantive law found in § 571.015.1 and § 562.021, was in dispute at trial. In this regard, he asserts that the supplied *mens rea* of knowingly extends not only to the proof element of whether a deadly weapon was used in committing the underlying offense, but to all the proof elements of the underlying offense, and that the issue of whether he acted knowingly with respect to those elements was obviously in dispute at trial given his claim that he never intended to shoot the victim. Thus, in deciding whether the State's contention is correct that the trial court's failure to instruct as to knowingly in paragraph second of Instruction No. 9, despite the clear mandates of MAI–CR 3d 332.02 and its Note on Use 2, was not plain error because that issue was not in dispute at trial, we necessarily must first determine to what extent, if any, the culpable mental state of knowingly is to be applied to the

proof elements of ACA in accordance with the substantive law, found in § 571.015.1 and § 562.021, and MAI–CR 3d 332.02 and its Notes on Use.

■ The appellant was charged with ACA, § 571.015.1, based on the underlying charge of second degree assault, § 565.060.1(5). In order to convict the appellant of ACA, as charged, the State was required, as a matter of due process, to prove beyond a reasonable doubt each and every element of that offense. *State v. Bradshaw,* 26 S.W.3d 461, 466 (Mo.App. 2000). As to the proof elements of ACA, § 571.015.1 reads:

> [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action....

Thus, in order to convict the appellant of ACA under this statute, the State was required to prove, beyond a reasonable doubt, that: (1) he committed the underlying offense of assault in the second degree; and (2) he did so by, with, or through the use, aid, or assistance of a deadly weapon. *State ex rel. Westfall v. Ruddy,* 621 S.W.2d 42, 43 (Mo. banc 1981); *State v. Danikas,* 11 S.W.3d 782, 789 (Mo.App.1999); *State v. Gott,* 784 S.W.2d 344, 346 (Mo.App.1990).

Section 571.015.1 does not *expressly* prescribe a culpable mental state. As such, the appellant contends that, pursuant to § 562.021.3, the culpable mental state of knowingly is to be supplied when submitting the offense of ACA. Subsection 3 of § 562.021 was added in 1997, effective August 28, 1997, and reads:

> Except as provided in subsection 2 of this section and section 562.026, if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such culpable mental state.

In an attempt to comply with subsection 3, as interpreted by the Criminal Instruction Committee in Note on Use 2, MAI–CR 3d 332.02 requires the jury to find in paragraph second that the defendant "knowingly committed" the underlying offense by, with, or through the use, aid, or assistance of a deadly weapon. As discussed, *supra,* however, the parties disagree as to whether the supplied *mens rea* in paragraph second of the instruction is to be read as applying to both the first and second proof elements of ACA, as the appellant contends, or only to the second element as the State contends. The resolution of this issue turns on an interpretation of § 562.021.3 as applied to § 571.015.1.

■ When interpreting statutes, our purpose is to "ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State v. Rousseau,* 34 S.W.3d 254, 259 (Mo.App.2000) (citations omitted). "The legislature 'is presumed to have intended what the statute says; consequently, when the legislative intent is apparent from the words used and no ambiguity exists, there is no room for construction.'" *Id.* (*quoting State v. Haskins,* 950 S.W.2d 613, 615 (Mo.App.1997)).

■ Section 562.021.3 begins, "Except as provided in subsection 2 of this section...." Subsection 2 of § 562.021, which was also added in the 1997 amendment, reads:

> If the definition of an offense prescribes a culpable mental state with regard to a particular element or elements of that offense, the prescribed culpable mental

state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the offense.

Reading subsections 2 and 3 together and giving the language used its plain and ordinary meaning, we interpret them as providing that if the definition of the offense provides a culpable mental state as to one or more elements of the offense, subsection 3 would not apply so as to require a supplied culpable mental state. In that regard, as discussed, *supra*, to convict on ACA under § 571.015.1, the State is required to first prove that the defendant committed the underlying offense. Proof of this element would necessarily require proof of each and every element of the underlying offense, including any prescribed *mens rea* of that offense, *State v. Hyman*, 37 S.W.3d 384, 391 (Mo. App. 2001); *Danikas*, 11 S.W.3d at 789, in this case, recklessly, the culpable mental state prescribed for second degree assault, § 565.060.1(5). *State v. Jennings*, 887 S.W.2d 752, 755 (Mo.App. 1994). Thus, in this case, § 571.015.1, by definition, implicitly prescribes a culpable mental state as to the first element of proof of ACA, proof of the elements of the underlying offense such that pursuant to § 562.021.2, § 562.021.3 would have no application. *Jennings*, 887 S.W.2d at 755. The upshot of our interpretation, of course, is that the prescribed culpable mental state for ACA, under § 571.015.1, would be the same as for the underlying felony, as expressly prescribed for that offense or as supplied pursuant to § 562.021.3.

 We recognize that our interpretation of § 562.021 and its application to the offense of ACA under § 571.015.1 is contrary to MAI-CR 3d 332.02 and its Note on Use 2. However, we would point out that our appellate courts have not previously addressed the application of

§ 562.021, as amended in 1997, to the offense of ACA. Having declared the substantive law on this issue and finding it to be in conflict with MAI-CR 3d 332.02 and its Note on Use 2, the substantive law controls. *State v. Carson*, 941 S.W.2d 518, 520 (Mo.*banc* 1997). Thus, the trial court's failure to instruct in the ACA verdict director, Instruction No. 9, in accordance with MAI-CR 3d 332.02 and its Note on Use 2, on the culpable mental state of knowingly, was not error, plain or otherwise.

Point denied.

### Conclusion

The judgment of the circuit court convicting the appellant of ACA, § 571.015.1, is affirmed.

HOWARD and HOLLIGER, JJ., concur.